THE PEOPLE *ex rel.* Joseph A. Joyce, Petitioner, *vs.* CHRIS-
TOPHER C. STRASSHEIM, Sheriff, *et al.* Respondents.

*Opinion filed December 10, 1909.*

1. HABEAS CORPUS—*a writ of habeas corpus cannot be made to
perform functions of writ of error.* An objection that the statute
under which a prisoner is sentenced is wholly void is one which
may be raised upon the record of his case and be reviewed on
error, but cannot be urged as ground for a writ of *habeas corpus.*

2. CONSTITUTIONAL LAW—*"due process of law" is not confined
to judicial proceedings.* The term "due process of law" means the
same as "the law of the land," and extends to every proceeding
which may deprive a citizen of life, liberty or property, whether
the process be judicial or administrative or executive in its na-
ture, and is designed to afford protection against arbitrary legis-
lation as well as against arbitrary executive or judicial action.

3. SAME—*due process of law does not mean statutes passed by
legislature.* Due process of law, or the law of the land, does not
mean statutes passed by the legislature, but means those certain
fundamental rights which our system of jurisprudence has always
recognized, and extends to every governmental proceeding which
may interfere with personal or property rights, whether the pro-
cess be legislative, judicial, administrative or executive.

4. PAROLE LAW—*parole is not a mere favor, to be arbitrarily
withdrawn.* To constitute due process of law it is not necessary
that a prisoner who has broken his parole shall be given a judicial
hearing before he can be confined for the whole term of his origi-
nal sentence; but the parole of a prisoner is not a mere act of
grace or favor, which may be arbitrarily withdrawn, regardless of
whether or not the prisoner has violated his parole.

5. SAME—*paroled prisoner has a right to hearing as to whether
he has violated his parole.* Under the rules of the board of par-
dons and the contract of parole a paroled prisoner is entitled to
remain out of the enclosure of the penitentiary unless he violates
some condition of the parole, and he has a constitutional right to
a hearing upon the question whether he has violated his parole.

6. SAME—*Parole law contemplates hearing by pardon board as
to whether parole was violated.* The Parole law, while it does not
so provide in terms, contemplates that a prisoner who has been ar-
rested for violating his parole shall have a hearing by the board
of pardons upon the question of such alleged violation, and if the
warden has acted arbitrarily it is the duty of the board to over-
rule his action and permit the prisoner to remain upon parole.

VICKERS, J., dissenting.

Original petition for writ of *habeas corpus*.

Thomas D. Knight, Frank R. Reid, Elwood G. Godman, and Frank L. Hatch, (John Byrne, and Daniel J. Ward, of counsel,) for petitioner.

· W. H. Stead, Attorney General, Joel C. Fitch, and Charles E. Woodward, (Wells M. Cook, of counsel,) for respondents.

Mr. Justice Cartwright delivered the opinion of the court:

The relator, Joseph A. Joyce, presented to us his petition for a writ of *habeas corpus*, wherein he alleged that on November 6, 1908, he was released by the State Board of Pardons from the Illinois State penitentiary, to which he had been sentenced for the crime of forgery; that he was so released on parole as an employee of Thomas H. Joyce at the Auditorium Hotel, in Chicago; that on May 12, 1909, the warden of said penitentiary issued an order reciting that he had been conditionally paroled, as aforesaid, and had violated the condition of his parole, wherefore it was ordered that he be re-taken and returned forthwith to the penitentiary; that he was imprisoned and restrained of his liberty by virtue of such order by the respondents, Christopher C. Strassheim, sheriff of Cook county, and William Davies, keeper of the common jail of said county; that he had not violated his parole and had not been found guilty of violating the same, and that he had not had a hearing of any kind to ascertain whether he had violated the conditions of the parole or any opportunity for a hearing and determination of that question. He alleged that the act under which he was sentenced, commonly called the Parole act, entitled "An act to revise the law in relation to the sentence and commitment of prisoners convicted of crime, and providing for a system of parole, and to pro-

vide compensation for the officers of said system of parole,"
in force July 1, 1899, (Laws of 1899, p. 142,) is uncon-
stitutional and void as a whole, for the reasons that it con-
tains more than one subject, both in its title and body, in
violation of section 13 of article 4 of the constitution, and
contains appropriations for the pay of parole agents and
the board of pardons, in violation of section 16 of said
article; and also that section 4 of said act is unconstitu-
tional and void for the reason that it gives the warden
power to re-take and re-imprison a paroled prisoner with-
out a trial or hearing of any kind whether the conditions
of the parole have been violated, whereby such prisoner is
deprived of his liberty without due process of law, in vio-
lation of the constitution of this State and the constitution
of the United States. The writ was ordered and issued,
and the respondents made returns setting forth the judg-
ment of conviction of the relator and his commitment to
the penitentiary, the rules and regulations established by
the board of pardons and the agreement entered into by
the relator under which he was paroled, and alleged that
on and after April 1, 1909, he violated said agreement
by failing and neglecting to make a written report to the
warden on the first day of April for the previous month
and failing to make such report on the first day of each
month afterward, and by leaving the employ of Thomas
H. Joyce and going beyond the limits of this State with-
out first obtaining permission of the warden to leave the
employment, and that the warden thereupon determined
that the relator had violated his parole agreement and is-
sued the order for the arrest and delivery to him of the
relator. The cause was argued and submitted for deci-
sion on the constitutional questions arising upon the peti-
tion and returns.

The first claim of counsel for the relator is, that the
Parole act, as a whole, is unconstitutional and void. We
had the question of the constitutionality of the original

Parole act, as passed and approved in 1895, before us in
the case of *George* v. *People,* 167 Ill. 447, and the act was
then sustained, but various changes have since been made,
and the objections to the act of 1899, now in force, did
not then exist. These objections are, that the act contains,
both in its title and body, two subjects of legislation, one
being the indeterminate sentence and parole system and the
other being the compensation for the officers of the system
and appropriations therefor, and that the act is therefore
void under section 13 of article 4 of the constitution and
the decisions of this court in *Ritchie* v. *People,* 155 Ill. 98,
and *Mathews* v. *People,* 202 id. 389. A further basis of
the claim is that sections 9 and 11 make appropriations for
the salaries of the officers of the parole system, who are
officers of the government, and therefore the act violates
section 16 of said article 4, which provides that bills mak-
ing appropriations for the salaries of officers of the gov-
ernment shall contain no provision on any other subject.
These questions which counsel seek to raise concerning the
validity of the entire act cannot be raised or considered in
this proceeding by *habeas corpus,* since they do not affect
the jurisdiction of the criminal court, in which the relator
was convicted. The courts have uniformly held, in very
numerous cases, that the writ of *habeas corpus* cannot be
made to perform the functions of a writ of error or an
appeal, and if the relator was sentenced under the provi-
sion of a void act that question could properly be raised on
a writ of error. (*People* v. *Jonas,* 173 Ill. 316; *People*
v. *Murphy,* 188 id. 144; *People* v. *Murphy,* 202 id. 493;
15 Am. & Eng. Ency. of Law,—2d ed.—172; 21 Cyc.
284.) No consideration, therefore, will be given to the ar-
gument that the act is unconstitutional and void as a whole.

It is next contended that section 4 of the act violates
the constitution of this State and the United States, for the
reason that it makes no provision for a hearing and de-
termination whether the relator violated the conditions of

his parole contract and the rules of the board of pardons relating thereto, and this is a question that could not have been raised on a writ of error upon the record of the relator's conviction and sentence. That section provides that the board of pardons shall have power to establish rules and regulations under which prisoners in the penitentiary may be allowed to go upon parole outside of the penitentiary building and enclosure. It also provides that all prisoners temporarily released upon parole shall at all times until the receipt of their final discharge be considered in the legal custody of the warden of the penitentiary from which they were paroled, and shall during the said time be considered as remaining under conviction for the crime of which they were convicted and sentenced and subject at any time to be taken back within the enclosure of said penitentiary. Full power to enforce the rules and regulations of the board of pardons and re-take and re-imprison any inmate upon parole is conferred upon the warden of the penitentiary, who may issue his order or writ for that purpose. It is made the duty of the warden, immediately upon the return of any conditionally released or paroled prisoner, to make report of the same to the board of pardons, giving the reasons for the return of the prisoner. Section 6 of the act provides for the final release and discharge of a prisoner who has faithfully served the term of his parole, if the board of pardons shall be of the opinion that he can be safely trusted to be at liberty and that his final release will not be incompatible with the welfare of society, and the Governor shall approve of such release and discharge.

The facts necessary to a decision of this case are as follows: The board of pardons adopted rules and regulations for the parole of prisoners in pursuance of the act, among which are the following:

"*Third*—He must not change employment nor leave employment unless by order of or upon permission from the warden first obtained in writing.

"*Fourth*—He must make a written report to the warden on the first day of each month for the month previous. This report must state how much money he had at the beginning of the month, how much he has earned during the month, how much he has expended, and for what, and how much he has on hand at the end of the month. If the prisoner has been idle during the month he must state the reason. He must also give any other information that will throw light upon his conduct and success during the month. These monthly reports must be endorsed by his employer.

"*Eighth*—A violation of any of the above rules forfeits the parole contract on the part of the party paroled and renders him liable to be returned at once to the penitentiary to serve out the maximum sentence."

On October 13, 1908, at a meeting of the board of pardons, it appeared that the relator had exhibited to the board sufficient evidence that he was entitled to be paroled, and it was then ordered that the warden permit him to depart temporarily and conditionally from the penitentiary upon some reliable person, firm or corporation agreeing to give him employment and keep him steadily employed for twelve months or until he received his final discharge, and who would promise that he would conform to all the conditions set forth in his parole agreement. Thomas H. Joyce made application for the parole of relator and made arrangements required by the act and the rules, which were satisfactory to the warden and the application was approved by him. On November 6, 1908, a parole agreement in triplicate was made, in writing, between the board of pardons and the relator, one copy of which was forwarded to Thomas H. Joyce, one was given to the relator and the original was retained by the warden. The relator was thereupon allowed to go upon parole, and the agreement contained the rules established by the board, including the eighth, which provided that a violation of any of the rules should forfeit the contract and render the relator liable to

be returned at once to the penitentiary to serve out the maximum sentence. The warden determined that the relator had violated his parole agreement, and on May 12, 1909, he issued the order for his arrest, by virtue of which he was taken into custody.

The position of counsel for the relator is, that under the constitutional provision that he shall not be deprived of liberty without due process of law he is entitled to a hearing before some authority as to whether he has violated the conditions of his parole and forfeited his rights under it. The Attorney General contends that a paroled prisoner is still a convict and in the legal custody of the warden although not within the prison walls; that the act of the warden in causing the arrest and return of a paroled prisoner is not different from what he may do in the case of a violation of the rules of prison discipline relative to convicts in the penitentiary; that it is an act of grace to permit a prisoner to go beyond the enclosure of the penitentiary, and that he may be returned and re-imprisoned without a hearing of any kind, judicial or otherwise, to determine whether he has violated the conditions of his parole contract or the rules under which he was permitted to go beyond the penitentiary enclosure.

Undoubtedly a prisoner on parole is still in the legal custody of the warden, (*Ughbanks* v. *Armstrong,* 208 U. S. 481,) and it is so provided in the Parole act and the contract which the relator entered into. The Supreme Court of Massachusetts, in *Oliver* v. *Oliver,* 48 N. E. Rep. 843, which was a suit for divorce, held that a person sentenced to the State prison for not less than three nor more than six years, who might be allowed his liberty by the prison commissioners, with the approval of the Governor and council, at any time after the expiration of the minimum term, was under sentence for the maximum term; and under our Parole act a person sentenced to the penitentiary is a prisoner until his final discharge. The Attorney Gen-

eral is also correct in the position that a paroled prisoner is not entitled to any judicial hearing or determination by a court. The term "due process of law," however, is not confined to judicial proceedings. It is the same as "the law of the land," and extends to every proceeding which may deprive a citizen of life, liberty or property, whether the process be judicial or administrative or executive in its nature. The constitutional provision is designed to protect and preserve the rights of the citizen against arbitrary legislation as well as against arbitrary executive or judicial action. (3 Words and Phrases, 2230.) Judge Cooley quotes as embodying more tersely and accurately the legal view of the principle than any other single sentence, the following from the opinion of Mr. Justice Johnson, of the Supreme Court of the United States, in *Bank of Columbia* v. *Oakley,* 4 Wheat. 235: "As to the words from *magna charta* incorporated in the constitution of Maryland, after volumes spoken and written with a view to their exposition, the good sense of mankind has at length settled down to this: that they were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." (Cooley's Const. Lim. 355.) Due process of law or the law of the land does not mean statutes passed by the legislature, but it means certain fundamental rights which our system of jurisprudence has always recognized, and extends to every governmental proceeding which may interfere with personal or property rights, whether the process be legislative, judicial, administrative or executive. (8 Cyc. 1083.) The constitutional provision was satisfied, so far as the original sentence was concerned, by the judgment of conviction, but it does not follow that the relator had no rights under the Parole act or his contract made in pursuance of it. The Supreme Court of Wisconsin held that under a statute providing an additional term of imprisonment in case of a prisoner es-

caping from a prison, one so escaping was liable to re-capture and to serve out the sentence without deducting the time of his voluntary absence and was not entitled to a judicial direction other than the original judgment, but that in order to confine him for an additional term for the offense of escaping from prison a trial and sentence were necessary. (*In re McCauley,* 3 Am. & Eng. Ann. Cas. 414.) Upon the arrest of the relator he was not to be con-fined for a term beyond his original sentence, and no ju-dicial proceeding was necessary to constitute due process of law for his confinement for the whole term. But we do not regard his parole as a mere act of grace and favor by the board of pardons or the warden. We cannot be-lieve that the legislature understood that the board, in es-tablishing rules for the parole of prisoners or exercising the discretion confided to them, would be merely dispensing favors to those whom they might choose to release in that way, or that the re-arrest of a paroled prisoner who had not violated his parole should be considered merely a with-drawal of a favor bestowed upon him. The rules and the parole contract do not contemplate that the warden can re-imprison a paroled prisoner, whether he has violated his parole or not, as a mere exercise of tyrannical power to bring him back to prison. Under the rules and the contract a paroled prisoner is entitled to remain out of the enclo-sure of the penitentiary unless he violates some condition of the parole, and section 6 of the act is designed to give him the benefit of acceptable service under his parole and obedience to its conditions, under which he may have a reasonable hope of final discharge. The case is somewhat like that of a conditional pardon, and in the case of *In re Kennedy,* 135 Mass. 48, relied upon by the Attorney Gen-eral as sustaining the doctrine that a re-commitment may be made by an executive order, the statute provided for a hearing by the Governor and council, and if it appeared that the conditionally pardoned convict had not violated the

conditions of his pardon he was to be discharged. In our opinion the relator was entitled to a hearing on the question whether he had violated any condition of his parole.

We think, however, that the act does contemplate a hearing before the board of pardons. Section 4 requires the warden, immediately upon the return of any conditionally released or paroled prisoner, to make report of the same to the board of pardons, giving the reasons for the return of the paroled prisoner. This provision appears to be for the purpose of providing for a review by the board of the action of the warden, and if he has acted arbitrarily and without good cause it would be the duty of the board to overrule his action and permit the prisoner to remain upon the parole from which he was recalled. The act gives the board of pardons supervision over the whole matter, and section 6 gives authority to determine whether the prisoner has served his parole acceptably and whether he can safely be finally discharged. The act does not, in terms, provide for a hearing before the board, but if the warden is not accountable to any one no report would be necessary, and, considering the whole provisions of the act, it could not have been intended that the re-imprisonment of a prisoner is to be left to the autocratic discretion or whim of the warden.

As we hold that the relator is entitled to a hearing before the board of pardons, section 4 of the act does not deprive him of his liberty without due process of law, and he will be remanded to the custody of the respondent Christopher C. Strassheim, sheriff of Cook county.

*Relator remanded.*

Mr. Justice Vickers, dissenting:

I do not concur in that portion of the majority opinion which holds that the Parole law provides for a hearing before the board of pardons. The majority opinion holds that the Parole law, which authorizes the warden of a peni-

tentiary to issue his warrant for the arrest of a paroled prisoner for the alleged violation of his parole contract, under which a prisoner is arrested and re-committed to the penitentiary, is unconstitutional unless there is in said law a provision for a hearing before some lawfully constituted authority which is authorized to determine the question whether the prisoner is guilty of having violated his parole contract. It would seem that this view is too clear for serious controversy. Assuming, therefore, upon the reasoning of the majority opinion and the authorities therein cited, that the petitioner is entitled to be discharged unless there is a provision in the Parole law for a hearing touching the question whether he has violated any of the conditions of his parole, I will express my views in regard to the question whether there is any hearing provided for, such as is required under the constitution, in the Parole law before petitioner can lawfully be deprived of his liberty.

The petition avers, and the return of the respondent admits, that Joseph A. Joyce, the petitioner, was paroled from the Illinois State penitentiary on November 6, 1908, by the State Board of Pardons; that he has not been ordered returned to the penitentiary by said board; that he has not violated his parole contract; that he has not had a hearing of any kind to ascertain whether he has violated his parole contract; that he has had no notice or opportunity to be present at a hearing of any kind to determine whether he has violated his parole, and that he has not been found guilty of violating his said parole. With these facts admitted in the record, it is clear that the petitioner has had no hearing and that he is confined in the penitentiary and restrained of his liberty without due process of law. Even if it be conceded that there is some provision in the Parole law under which petitioner might have a hearing before the board of pardons, as held in the majority opinion, this petitioner has had no such hearing, and it is manifest that no hearing in the future, such as the constitution requires,

242—24

is contemplated. But in my opinion there is nothing in the Parole act which can, even by implication, be construed to provide for a constitutional hearing of a paroled prisoner. The only provision in the act which can be held to have any possible connection with a hearing is found in section 4 of said act, which requires the warden of a penitentiary, immediately upon the return of any conditionally released or paroled prisoner, to make report of the same to the board of pardons, giving the reasons for the return of the paroled prisoner. Of this provision the majority opinion says: "This provision appears to be for the purpose of providing for a review by the board of the action of the warden, and if he has acted arbitrarily and without good cause it would be the duty of the board to overrule his action and permit the prisoner to remain upon the parole from which he was recalled." There is nothing further in said act prescribing the manner of a hearing before the board of pardons. In point of fact, the act does not require the board of pardons to hear the matter at all. It merely requires the warden to report to the board of pardons that he has caused the prisoner to be recommitted to the penitentiary, giving the reasons for the return. It does not impose upon the board of pardons any duty whatever to institute an inquiry in regard to the truth of the alleged violation of the parole agreement. The provision requiring the warden to report to the board of pardons never was intended for any purpose except to enable the board of pardons to keep a record of the conduct of prisoners who have been paroled by said board.

If, as the majority opinion holds, the requirement that the warden shall notify the board of pardons that the prisoner has been re-committed to the penitentiary is designed to give the board of pardons jurisdiction and power to review the action of the warden, the question arises as one of practical administration, what is to be the character of the procedure and the nature of the hearing before the

board of pardons? The board of pardons is a statutory board, and has no powers except such as are clearly given by the statute or necessarily implied from those which are granted. Is this supposed hearing to be upon *ex parte* affidavits in the absence of the accused party, or is it to be upon evidence of witnesses in his presence? Must the finding of the three members of the board of pardons be a unanimous verdict, or shall a majority be sufficient to determine the question submitted? Shall the trial be with or without a formal specification or written charge? Has the accused the right to be present and to be represented by counsel at such hearing? These and many other questions relating to the alleged hearing will necessarily arise if the board of pardons is held to be charged with the duty of reviewing the action of the warden.

It cannot be reasonably supposed that the legislature intended to provide for a hearing by the board of pardons and at the same time make no provisions for carrying the power into execution. A law which provides for a hearing before depriving one of life, liberty or property must provide for due notice of a constitutional hearing. The duty to give such hearing must be so clear that its performance is compellable by *mandamus*. It is not enough that the persons affected may by chance have notice, or that they may, as a matter of favor, have a hearing. The law must require due notice to them and give them the right of a hearing and a chance to be heard. (McGehee on Due Process of Law, p. 82, and cases there cited; *Stuart* v. *Palmer,* 74 N. Y. 183; *Philadelphia* v. *Miller,* 49 Pa. St. 440.) In the case last above cited it is said: "Notice, or at least the means of knowledge, is an essential element of every just proceeding which affects rights of persons or property."

It seems to be trifling with constitutional liberty to hold that the petitioner in this case obtained all hearing that he was entitled to when the warden of the penitentiary noti-

fied the board of pardons that he had re-committed petitioner to the penitentiary for a violation of his parole. To call such a proceeding a hearing, or as anything in the nature of a hearing, such as the constitution requires, seems to me to be a misnomer. In my opinion it would be more reasonable to hold that the petitioner was not entitled to any hearing of any kind than to hold that he is entitled to a hearing and remand him to the penitentiary when he has had no semblance of a hearing.

There is another reason why petitioner's imprisonment is illegal. He was arrested on a warrant issued by E. J. Murphy, warden of the penitentiary, without any affidavit or complaint made under oath. Section 6 of the bill of rights provides that "no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched, and the persons or things to be seized." If it be conceded that the paroled prisoner is entitled to his liberty under the constitution while on parole, then it follows that he cannot be deprived of that liberty without due process of law or arrested and confined in prison under a warrant issued by the warden without an affidavit showing *prima facie* that he has violated his parole contract. If the power granted the warden under the Parole law is abused or used arbitrarily the prisoner has no redress. It is a dangerous thing to the liberty of the people to grant the power to anyone to issue warrants without anyone becoming liable to a prosecution for perjury in case the warrants should be improperly issued. An affidavit upon which perjury can be assigned should precede the issuance of a warrant upon which a person is to be arrested and restrained of his liberty. I think the petitioner is entitled to be discharged.