THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. JOSEPH A. JOYCE, Plaintiff in Error.

*Opinion filed June 29, 1910—Rehearing denied October 12, 1910.*

1. CONSTITUTIONAL LAW—*act may contain various provisions relating to the same subject.* While every act, under section 13 of article 4 of the constitution, must embrace but a single subject, yet it may include other provisions which are not foreign to the general subject and legitimately tend to accomplish the legislative purpose with reference to such subject.

2. SAME—*the Parole act of 1899 does not violate section 13 of article 4 of constitution.* The Parole act of 1899 is concerned with but one subject,—the establishment of a system of parole,—and the various provisions of the act are so connected with and in furtherance of that subject that the act is not in violation of section 13 of article 4 of the constitution.

3. SAME—*purpose of section 16 of article 4 of the constitution.* The purpose of section 16 of article 4 of the constitution, providing that bills making appropriations for the pay of members of the General Assembly and for the salaries of the officers of the government shall contain no provision on any other subject, is to separate legislation from appropriation, so that no officer's salary shall depend upon legislation and no legislation depend upon any officer's salary.

4. SAME—*title of act must be construed with reference to language used in it alone.* The title of an act must be construed with reference to the language used in it alone, and not in the light of what the body of the act contains.

5. SAME—*presumption is always in favor of constitutionality of statute.* The presumption is always in favor of the constitutionality of a statute, and courts will not declare it void unless satisfied, beyond all reasonable doubt, of its invalidity.

6. SAME—*construction upholding constitutionality of act preferred.* Where a statute is open to two constructions equally reasonable, one of which will render the statute invalid and the other sustain it, the latter construction must be adopted.

7. SAME—*word "provide," used in title of Parole act of 1899, means "fix" or "establish."* The word "provide," used in the title of the Parole act of 1899 with reference to providing compensation for the parole agents and members of the board of pardons, means "fix" or "establish" such compensation and is not intended as an appropriation of money.

8. SAME—*direction of Parole act as to how compensation shall be paid is not an appropriation.* The direction contained· in sections 9 and 11 of the Parole act of 1899, that the compensation of the parole agents and members of the board of pardons shall be paid out of money not otherwise appropriated, does not amount to an appropriation of money, within the meaning of section 16 of article 4 of the constitution.

9. SAME—*provisions of Parole act become a part of the sentence of the prisoner.* The provisions of the Parole act of 1899 with reference to the term for which a prisoner shall be sentenced become a part of that sentence as much as though they were written in the records of the court.

10. SAME—*powers granted to board of pardons by Parole act are not judicial.* The powers granted to the board of pardons by the Parole act of 1899 are not judicial in character but are matters of prison discipline, to be exercised for the benefit of offenders imprisoned in State institutions.

11. SAME—*Parole act of 1899 does not confer judicial power on administrative officers.* The Parole act of 1899 is not an interference with the functions of the court, but is rather the exercise, through the legislative and administrative departments of the government, of the power of discipline which the State possesses, and is not unconstitutional as conferring judicial power upon administrative officers.

12. SAME—*provisions of the Parole act as to final discharge of prisoner are not invalid.* The provisions of the Parole act of 1899 with reference to the final discharge of a paroled prisoner are not invalid, as infringing the constitutional right of the Governor to grant pardons and reprieves and commute sentences.

13. SAME—*sentence under Parole act is definite.* The sentence of a convicted person under the Parole act of 1899 is not a matter of discretion with the court but is for the maximum term provided by law, and is therefore not indefinite and uncertain.

14. SAME—*convicted person has no fundamental right to have court fix punishment.* The right of a convicted person to have the court fix his punishment is not a fundamental right, and the fact that the Parole act of 1899 does not secure that right to a convicted person does not render the act invalid, as repugnant to the constitutional provision concerning due process of law.

15. SAME—*the Parole act of 1899 is constitutional.* The Parole act of 1899 is constitutional. (*People v. State Reformatory,* 148 Ill. 413, *George v. People,* 167 id. 447, and *People v. Strassheim,* 242 id. 359, adhered to.)

DUNN, CARTWRIGHT and COOKE, JJ., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

THOMAS D. KNIGHT, FRANK L. REID, ELWOOD G. GODMAN, and FRANK L. HATCH, (JOHN BYRNE, and DANIEL J. WARD, of counsel,) for plaintiff in error.

W. H. STEAD, Attorney General, JOEL C. FITCH, and CHARLES E. WOODWARD, (JUNE C. SMITH, and WELLS M. COOK, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was convicted of the crime of forgery at the November term, 1907, of the criminal court of Cook county, and pursuant to the Parole act of 1899, and its amendments, was sentenced to confinement in the penitentiary "until discharged by the State board of pardons, as authorized and directed by law, providing such term of imprisonment in the said penitentiary shall not exceed the maximum term for the crime for which the said defendant was convicted and sentenced." The record is brought here by writ of error for review.

Plaintiff in error has assigned as error on the record that the verdict, sentence and commitment are void because the Parole act, on which they are based, is unconstitutional and void. The grounds for claiming that the Parole act is unconstitutional are, that it contains, both in its title and body, more than one subject of legislation, in violation of section 13 of article 4 of the constitution; that it makes appropriation for the salary of officers of the government, in violation of section 16 of article 4 of the constitution; that it confers judicial powers on the board of pardons; that it violates the "due process of law" clause of the constitution and encroaches upon the Governor's constitutional powers to commute sentences.

The Parole act provides (Hurd's Stat. 1908, pp. 796-799,) that in cases falling within its terms the convicted person shall be sentenced to the penitentiary, but the court shall not fix the term of such imprisonment, which shall not be less than one year nor greater than the maximum term provided by law for the crime of which the prisoner was convicted. It provides for a physical examination and collection and preservation of information in regard to the prisoner's antecedents and present condition. It imposes upon the prison authorities and the State board of pardons certain duties in regard to carrying the act into effect and authorizes the appointment of a parole agent for each of the penitentiaries. It fixes the salary of each parole agent at $1500 per year, and allows to each member of the board of pardons $1500 per year for services performed under the act. It provides that such sum shall be paid monthly in the case of parole agents, on the certificate of the board of penitentiary commissioners, and in the case of the board of pardons, on their own certificate, approved by the Governor.

The first Parole act was passed in 1895. (Laws of 1895, p. 158.) The constitutionality of this act was sustained in *George* v. *People,* 167 Ill. 447. Counsel for the plaintiff in error insist that the present act includes three subjects in both its title and body, viz., the sentence and commitment of prisoners convicted of crime, a system of parole, and compensation for the officers of said system of parole. The general subject dealt with by the act is the manner of carrying into effect the punishment, provided by law, of persons convicted of certain offenses. All of its provisions relate to that subject and are reasonably connected therewith. The principal purpose of the act is to provide a system of parole. Every act must embrace but a single subject, but it may include other provisions which are not foreign to the general subject and legitimately tend to accomplish the legislative purpose with reference to that

general subject. (*People* v. *McBride,* 234 Ill. 146; *Meul* v. *People,* 198 id. 258; *Town of Manchester* v. *People,* 178 id. 285.) The act embraces and is concerned with but one subject, viz., the establishment of a system of parole, and the various provisions of the act are connected with and are in furtherance of that subject. The act is not, therefore, in violation of section 13 of article 4 of the constitution.

It is further insisted that the act is in contravention of section 16 of article 4 of the constitution. That section provides, in part, that the General Assembly "shall make no appropriation of money out of the treasury in any private law," and that bills making appropriations for the pay of members and officers of the General Assembly and for the salaries of the officers of the government "shall contain no provision on any other subject." The manifest object of this provision is to separate legislation from appropriation, in order that no officer's salary shall depend upon legislation and no legislation upon the salary of any officer. The ninth and eleventh sections of the Parole act fix the salaries of the parole agents and board of pardons, and provide that they shall be paid out of "any money in the treasury not otherwise appropriated." It is contended by plaintiff in error that these provisions of sections 9 and 11 are appropriations of money, and therefore in contravention of said section 16 of article 4. It is insisted, however, by counsel for the State that the parts of the act making appropriations for the salary of parole agents and board of pardons are separable from the other provisions of the act, and therefore, even if it be conceded that they make appropriations, they do not render the whole act invalid. Counsel for plaintiff in error reply that even if this be true, the constitutional prohibition against the inclusion of more than one subject of legislative action applies not only to the act itself but to the title; that when two subjects are mentioned in the title, as well as in the body of

the act, the whole act will be void, it being impossible to choose between the subjects and hold one valid and the other void.

Does the title contain two subjects? The act is entitled "An act to revise the law in relation to the sentence and commitment of persons convicted of crime, and providing for a system of parole, and to provide compensation for the officers of said system of parole." In determining whether this title contains two subjects the meaning of the word "provide" is of controlling importance. Counsel for the State argue that the word "provide," as used in this title, is synonymous with the word "fix" or "establish," while counsel for plaintiff in error insist that the usual meaning of the word "provide" is that of "supplying" or "furnishing." The title must be construed with reference to the language used in it alone, and not in the light of what the body of the act contains. (*Ritchie* v. *People,* 155 Ill. 98.) If "provide" can in this connection be held to mean "fix," "establish," "determine" or "settle," then the clause, "to provide compensation for the officers of said system of parole," should be construed to mean to fix or determine the compensation of such officers. Webster's New International Dictionary gives as one of the definitions of "provide:" "To establish as a previous condition, as, the contract provides that the work be well done." In the Standard Dictionary it is defined: "To grant, lay down or stipulate as a condition or provision, as, the contract or statute provided that a certain thing shall be done." It is impossible to lay down or establish anything as determining the status or rights of a person without thereby fixing or establishing that thing. The use of the word "provide" or "provided" in the sense of "fix" or "establish" is common. It is used in that sense in the following sections of the constitution of 1870: Sec. 13, art. 5; sec. 20, art. 5; sec. 7, art. 6; sec. 12, art. 6; sec. 16, art. 6; sec. 21, art. 6; sec. 28, art. 6; sec. 32, art. 6; sec. 4, art. 8; sec. 6, art. 10;

sec. 11, art. 10; sec. 13, art. 11; sec. 3, art. 12; sec. 21 of schedule. The word "provide" is often used in our statutes in the sense of "fix" or "establish." (See Hurd's Stat. 1908, chap. 53, sec. 3, p. 1072; chap. 53, sec. 7, p. 1073; chap. 53, sec. 11, p. 1077; chap. 53, sec. 60*b*, p. 1100.) None of the dictionaries give "appropriate" as a synonym for "provide," while Fallows on Synonyms and Antonyms gives "appropriate" as an antonym of "provide."

A legislative act *providing* money is one thing and a legislative act *appropriating* money is quite a different thing. A legislative appropriation does not provide money but takes effect upon money already provided. The word "provide" may have the meaning contended for by either counsel, but the universal rule is, that when a statute is susceptible of two constructions, one of which will render it unconstitutional and another construction equally reasonable which will sustain its constitutionality, that construction which will sustain it must be adopted. (1 Lewis' Sutherland on Stat. Const. secs. 83-127; 26 Am. & Eng. Ency. of Law,—2d ed.—p. 640; *State* v. *Schlitz Brewing Co.* 104 Tenn. 715.) The presumption is always in favor of the constitutionality of an act of the legislature. The courts will approach the question of the invalidity of the act with great caution, and will never declare it void unless satisfied, beyond all reasonable doubt, of its invalidity. (*People* v. *Nelson,* 133 Ill. 565; *People* v. *Hutchinson,* 172 id. 486.) It must be presumed that the legislature considered the constitutionality of its action in the passage of this act; that it knew it could not lawfully put a provision for an appropriation either in the title or the body of the act; that it knew to do so would render the whole act invalid. Surely the legislature did not, in passing this act, intend that it should be a nullity. "The constitutionality of a law, then, is to be presumed, because the legislature, which was first required to pass upon the question, acting, as they must be deemed to have acted, with integrity and

with a just desire to keep within the restrictions laid by the constitution upon their action, have adjudged that it is so. They are a co-ordinate department of the government with the judiciary, invested with very high and responsible duties, as to some of which their acts are not subject to judicial scrutiny, and they legislate under the solemnity of an official oath, which it is not to be supposed they will disregard." (Cooley's Const. Lim.—7th ed.—p. 254.)

In the light of these authorities it cannot be said it is clear, beyond all reasonable doubt, that the title of this act is double. Such an interpretation can be reasonably and properly given to the word "provide" that the title of the act can legitimately be held to be single. That construction ascribes to the legislature an intention to make the act conform to the requirements of the constitution and is in harmony with the authorities. It is therefore the duty of this court to so construe it.

The direction of the payment of the parole agents and members of the board of pardons out of money not otherwise appropriated was not, in our view, an attempt to make an appropriation within the purview of the constitution. The appropriations to pay the salaries provided for in this act are made in the general Appropriation act every two years. The provisions of the statutes with reference to the question of appropriations considered in *Ritchie* v. *People, supra,* and *Mathews* v. *People,* 202 Ill. 389, are plainly distinguishable from the provisions of this act on this subject. In view of the wording of the statutes then being considered, nothing is said in those cases that in any way conflicts with the conclusions here reached.

It is further contended by counsel for plaintiff in error that the provisions of sections 1 and 6 of said Parole act are unconstitutional, and that therefore the entire act must be held invalid. The reasoning of this court in *People* v. *State Reformatory,* 148 Ill. 413, *George* v. *People, supra,* and *People* v. *Strassheim,* 242 Ill. 359, covers all the points

raised on this branch of the case and conclusively settles them contrary to the contention of plaintiff in error. The questions, however, are of such great importance and have been so earnestly and exhaustively presented that we deem it appropriate to review again, briefly, the questions raised as to the constitutionality of these sections.

Said section 6 reads as follows: "It shall be the duty of the warden to keep in communication, as far as possible, with all prisoners who are on parole from the penitentiary of which he is the warden, also with their employers, and when, in his opinion, any prisoner who has served not less than six months of his parole acceptably, has given such evidence as is deemed reliable and trustworthy that he will remain at liberty without violating the law, and that his final release is not incompatible with the welfare of society, the warden shall make certificate to that effect to the State board of pardons; and whenever it shall be made to appear to the satisfaction of the State board of pardons from the warden's reports or from other sources, that any prisoner has faithfully served the term of his parole, and the board shall be of the opinion that such prisoner can safely be trusted to be at liberty, and that his final release will not be incompatible with the welfare of society, the State board of pardons shall have the power to cause to be entered of record in its office an order discharging such prisoner for, or on account of his conviction, which said order, when approved by the Governor, shall operate as a complete discharge of such prisoner in the nature of a release or commutation of his sentence to take effect immediately upon the delivery of a certified copy thereof to the prisoner, and the clerk of the court in which the prisoner was convicted shall, upon presentation of such certified copy, enter the judgment of such conviction satisfied and released pursuant to said order. It is hereby made the duty of the clerk of the board of pardons to send written notice of the fact to the warden of the penitentiary of the

proper district, whenever any prisoner on parole is finally
released by said board."

It is first insisted that this section confers judicial pow-
ers on the board of pardons and is unconstitutional on that
ground.   Judicial power, in a constitutional sense, is the
power "which adjudicates upon and protects the rights and
interests of individual citizens and to that end construes
and applies the law." (*Owners of Lands* v. *People,* 113
Ill. 296.)   If this section invades the domain of the judicial
powers of the court it must do so by virtue of its operation,
in connection with the other provisions of the act, by de-
priving the court of its power to sentence a person when
convicted of crime and conferring upon the board of par-
dons the power to change or alter the sentence already
imposed by the court.   It is contended that this section
deprives the defendant of his right to have the court fix a
definite term of imprisonment and makes no provision for
the determination of the sentence at any definite time be-
tween the maximum and the minimum term.   Is the sen-
tence of the court merely a sentence to the penitentiary
without a fixed limit to its duration, leaving the power to
fix the limit and make it definite and certain to be exercised
by the board of pardons, or is it a sentence which definitely
fixes the term of imprisonment?   The first section of the
Parole act of 1899 specially provides that the term of one
sentenced under its provisions shall not exceed the maxi-
mum term provided by law for the 'crime of which the
prisoner was convicted, nor shall it be less than one year.
The provisions of the statute become a part of the sentence,
as much as though they were written in the records of the
court.   The jury are not required to fix the term of the
sentence. (*Hagenow* v. *People,* 188 Ill. 545; *Herder* v.
*People,* 209 id. 50.) · This very question was decided in
*People* v. *State Reformatory, supra.*   In that case this court
said (p. 419): "It is insisted, however, that as by the
judgment and warrant of commitment the imprisonment

was not for a specified time but 'to be terminated by the board of managers of the Illinois State Reformatory,' the judgment and *mittimus* were void for uncertainty, and that the statute, which makes provision for such a judgment, is unconstitutional and invalid." In that case, as in this case, defendant's counsel relied on *People v. Pirfenbrink,* 96 Ill. 68, where it was held that all judgments must be specific and certain and must determine the rights recovered or the penalties imposed. In commenting on the *Pirfenbrink case,* and the effect of the holding therein, we said, (*People* v. *State Reformatory,* p. 420) : "We think that the judgment and *mittimus* in this case must be read and interpreted in the light of and under the restrictions imposed by the statute upon which they are based. That statute provides that although the sentence is a general sentence to imprisonment, yet that 'such imprisonment shall not exceed the maximum term provided by law for the crime for which the prisoner was convicted and sentenced.' * * * The fact that the prisoner might, in accordance with the provisions of the act, be sooner discharged by an order of court, predicated upon the recommendation of the board of managers of the reformatory or by the pardon or commutation of the Governor, would not have the effect of rendering the sentence and commitment uncertain and indefinite." Under this statute the sentence of plaintiff in error was to be the maximum punishment, so far as the duration was concerned, which the law prescribed for the offense for which he was convicted. The judge did not say so but the law said so, at the same time providing under what conditions he could secure an earlier discharge. (*State* v. *Page,* 60 Kan. 664; *Murphy* v. *Commonwealth,* 172 Mass. 264; *People* v. *Warden,* 78 N. Y. Supp. 907; *Miller* v. *State,* 149 Ind. 607.) If in said section 6 there is authority in the board of pardons to mitigate sentences in the manner provided therein, such action, if taken by the board, does not amount to a sentence of the prisoner. He must have

been sentenced by the court before the board of pardons
can act at all.   Furthermore, if the contention of counsel
for plaintiff in error on this point be sound, then all stat-
utes allowing deductions for good time are unconstitu-
tional.   The great weight of authority, however, is that such
statutes do not change or alter the sentence of the court
and do not confer judicial powers on the prison authorities.
*Fite* v. *State,* 114 Tenn. 648; *In re Linden,* 112 Wis. 523;
*In re Cassidy,* 113 R. I. 143; *Woodward* v. *Murdock,* 124
Ind. 439; *Ex parte Wadleigh,* 82 Cal. 518; *Opinions of
Justices,* 13 Gray, (Mass.) 618.

The three departments of government are susceptible
of classification under three heads:   the legislative, execu-
tive and judicial; "but the classification cannot be very ex-
act, and there are many officers whose duties cannot be
exclusively arranged under the duties of either of these
heads."   (Cooley on Torts, p. 375.)   Administrative and
executive officers are often called upon, in the performance
of their duties, to exercise judgment and discretion, to in-
vestigate, deliberate and decide, and yet it is held they do
not exercise judicial power within the meaning of the con-
stitutional provision.   (*Owners of Lands* v. *People, supra;
People* v. *Bartels,* 138 Ill. 322.)   The functions of the court
in regard to the punishment of crimes are to determine
the guilt or innocence of the accused, and if that determina-
tion be one of guilt, then to pronounce the punishment or
penalty prescribed by law.   The execution of the sentence
belongs to a different department of the government.   The
manner of executing the sentence and the mitigation of
punishment are determined by the legislative department,
and what the legislature has determined in that regard
must be put in force and effect by administrative officers.
(*State* v. *Duff,* 122 N. W. Rep. [Iowa,] 829; *Miller* v.
*State, supra; In re Marlow,* 75 N. J. L. 400.)   It was
settled by *George* v. *People, supra,* that the Parole act of
1895 did not confer judicial powers upon administrative

officers. The only difference between the act of 1895 and the act of 1899 in regard to the question now under consideration is, that under the former the court acted on the recommendation of the board before the Governor was called upon to act, while under the act of 1899 the court is not called upon to act but the Governor acts directly upon the recommendation of the board. The board of pardons cannot and does not discharge a convict. It has no more power in that regard under the act of 1899 than under the act of 1895. Its functions are merely advisory. The Governor may commute the sentence of any prisoner upon the recommendation of the board or he may refuse to commute. The convict cannot be discharged until the Governor commutes his sentence. The Parole law is not an interference with the functions of the court, but is rather the exercise, through the legislative and administrative departments of government, of the power to discipline, which the State possesses. (*George* v. *Lillard,* 106 Ky. 820.) Powers granted under this act to the board of pardons are not judicial in character but are matters of prison discipline and were intended to be exercised for the benefit of offenders who are imprisoned in our State institutions. We can not yield assent to the contention of plaintiff in error that the provision of this act by which the court sentences the accused to the maximum term fixed by the statute is an infliction of punishment out of proportion to the offense. The act is not unconstitutional, as conferring judicial powers on administrative officers.

It is further insisted that the final discharge of a paroled convict under the provisions of this section is an encroachment upon the executive powers of the Governor, and therefore unconstitutional. The action of the board of pardons under said section is nothing more than an investigation of the conduct of the convict whose case is under consideration. It merely makes a recommendation to the Governor. The discharge or commutation, as we have

seen, is made by the Governor. This section does not infringe the constitutional right of the Governor to grant pardons, reprieves and commute sentences. *State* v. *Duff, supra; In re Marlow, supra; Miller* v. *State, supra.*

It is further contended that said provisions of said sections 1 and 6 are repugnant to the constitutional provision as to due process of law; that due process of law requires that the court fix a definite punishment in sentencing the accused. Due process of law was fully discussed in *People* v. *Strassheim, supra,* and that discussion need not be here repeated. The right to have the court fix the amount of punishment is no more a fundamental right. than it is to have the jury fix it, and it was held in *People* v. *State Reformatory, supra,* that the latter was not a fundamental right. The contention of the plaintiff in error cannot be upheld that under the common law the court fixed the punishment in all cases in which the jury did not fix it. (Hale's Pleas of the Crown, 11; 4 Blackstone's Com. 237.) Under the Parole act the court is not given any discretion in fixing the punishment, and can therefore exercise none. Under the act it sentences to imprisonment, but that is not all of the sentence. The provisions of the Parole act are incorporated into the sentence by virtue of law, and become a part of it as much as if the provisions were actually written into it. (*Kelly* v. *People,* 115 Ill. 583; *People* v. *State Reformatory, supra; Hagenow* v. *People, supra.*) Nothing is said in *George* v. *People, supra,* that in any way conflicts with this conclusion.

The contention that the Parole act of 1899 is uncertain and indefinite and cannot be executed without the intervention of the board of pardons is without force. That contention, we think, results from a misapprehension of what the sentence under that act really is. The sentence is for the maximum term and is therefore definite and certain. (*People* v. *State Reformatory, supra; Commonwealth* v. *Brown,* 167 Mass. 144; *State* v. *Perkins,* 120

N. W. Rep. [Iowa,] 62.) The action of the board of pardons is not required to determine when the term of imprisonment shall end.

The contention of plaintiff in error that section 4 of the Parole act is unconstitutional, in that it provides that the paroled convict who has broken his parole may be returned to the prison by virtue of the warden's warrant, is fully answered in *People v. Strassheim, supra.* The authorities cited and relied on here were cited in that case. That decision fully disposes of this question.

The cases of *People v. State Reformatory, supra, George v. People, supra,* and *People v. Strassheim, supra,* must, in effect, be overruled if the contentions of plaintiff in error as to the unconstitutionality of said sections 1 and 6 be upheld. We see no reasons to change the conclusions reached in those cases. On the contrary, we believe they are supported by sound public policy and the great weight of authority. The present Parole act, in our judgment, must be held constitutional.

The conclusions already reached dispose of the entire case. We therefore forbear comment on the other questions raised in the briefs.

The judgment of the criminal court of Cook county will be affirmed.          *Judgment affirmed.*

DUNN, CARTWRIGHT and COOKE, JJ., dissenting:

The constitutional prohibition against the inclusion of more than one subject of legislation applies not to the title but to the act itself. If an act deals with a single subject, the mention in the title of another independent subject in addition to that dealt with in the body of the act will be rejected and the act sustained. If the title mentions a single subject, but the act, in addition to that subject, includes legislation upon another independent subject, the title limits the act, and that part of the act relating to the

subject mentioned in the title will be sustained and the residue disregarded. Where, however, the title mentions two subjects and the act includes both, the whole act is void. Legislation upon two subjects in one act is forbidden to the legislature. While one part of such an act may appear to be vastly more important than another, each part, as an expression of legislative intention, is of equal force. Each expresses the legislative will in precisely the same form, and no authority exists for declaring the one expression valid and the other void. It is more important that the limitations of the constitution should be observed by the various departments of the government than that any particular attempt at legislation should be preserved.

An appropriation for the purpose of carrying into effect an act is germane to the act, and does not, therefore, constitute an independent subject of legislation, within the meaning of section 13 of article 4 of the constitution. The appropriations contained in the act here under consideration are not, however, merely appropriations for carrying into effect the general purposes of the act, but are specific appropriations for the salaries of the officers charged with the enforcement of the act. They therefore come within the prohibition of section 16 of article 4 of the constitution, which provides that bills making appropriations for the pay of members and officers of the General Assembly and for the salaries of the officers of the government shall contain no provision on any other subject, thus making the pay of members and officers of the General Assembly and the officers of the government a separate subject of legislation, which cannot be included with any other subject. *Mathews* v. *People,* 202 Ill. 389; *Ritchie* v. *People,* 155 id. 98.

That the act in question purports to appropriate money for the payment of the salaries of the members of the board of pardons and parole agents is not within the realm of discussion, and, indeed, is not questioned by counsel.

The ninth and eleventh sections are as follows, (Laws of 1899, p. 146):

"Sec. 9. Each of the boards of penitentiary commissioners shall have power and authority to appoint a parole agent for each of the penitentiaries, and to prescribe the duties of said officers; that said parole agent shall at all times be subject to the orders of said board, and shall receive a salary of not to exceed $1500 per year, payable monthly upon the certificate of said board and upon warrants drawn by the Auditor of Public Accounts, out of any money in the treasury not otherwise appropriated."

"Sec. 11. There shall be allowed to each member of the board of pardons the sum of $1500 per year to compensate him for services performed under this act, said sum to be payable monthly on certificates of the board approved by the Governor, and payable out of any money in the treasury not otherwise appropriated."

This language directs the payment of the amounts mentioned, at certain times and upon certain vouchers, out of any funds in the treasury not otherwise appropriated. It sets apart the amounts mentioned for the particular purposes specified. Is there any reason why the Auditor might not, upon this authority, issue the warrants or the Treasurer pay them? Appropriation is merely the setting apart of funds to a particular use. In *Mathews* v. *People, supra,* section 2 of the act to create free employment offices was under consideration, which provided for the appointment of a superintendent, assistants and clerks, fixed their salaries and provided that the amounts of such salaries, "together with proper amounts for defraying the necessary costs of equipping and maintaining the respective offices, shall be paid out of any funds in the State treasury not otherwise appropriated." It was there held that the section was an appropriation, which was violative of section 16 of article 4 of the constitution. There is no substantial difference in the language there used and that of sections 9

and 11 above set forth, except that the latter is somewhat fuller. The case cannot be disposed of by saying that the provisions of the act in the *Mathews case* are plainly dis-- tinguishable from the provisions of the act here in question and that nothing said in that case conflicts with the con- clusion reached by the majority of the court. No distinc- tion is or can be pointed out, for the reason that none exists. Counsel for the People have never gone to the ex- tent of claiming that sections 9 and 11 do not attempt to make appropriations. Their efforts to sustain the act have been directed to the title.

The majority opinion says that the appropriations to pay the salaries provided for in this act are made in the general Appropriation act every two years. In the year 1899, when the Parole act now under consideration was passed, the act "to provide for the ordinary and contingent expenses of the State government until the expiration of the fiscal quarter after the adjournment of the next regu- lar session of the General Assembly" made a specific ap- propriation of $6000 per annum for the salaries of the members of the board of pardons, being at the rate fixed by law. (Laws of 1899, p. 65.) This act was passed on April 19, 1899. The Parole act was passed two days later, on April 21, 1899, containing the specific appropriations above set forth for the payment of the parole agents and the additional amounts allowed to the members of the board of pardons for their services under the act. (Laws of 1899, p. 142.) No other specific appropriations were made for the payment of the salaries of the parole agents and the additional salaries of the members of the State board of pardons for the years beginning July 1, 1899 and 1900. By these sections such payments were sought to be authorized, and, so far as the language is concerned, were authorized. While the salaries of the members of the board of pardons were, no doubt, properly payable out of the appropriation for the "payment of the officers and mem-

bers of the next General Assembly, and for the salaries of the officers of the State government," yet the appropriation of the original salaries in what is known as the "omnibus bill" and of the additional amount provided by the Parole act in the act itself, is conclusive of the intention of the legislature in inserting section 9 in the latter act. Such action is consistent with the action two years before, at the time the board of pardons was created, in 1897, when the appropriation for the salaries of the members was included in section 11 of the act creating the board. (Laws of 1897, p. 272.)

Not only did the act attempt to appropriate money for these salaries, but it is equally clear that such appropriation was included in the title. The act is entitled "An act to revise the law in relation to the sentence and commitment of persons convicted of crime, and providing for a system of parole, and to provide compensation for the officers of said system of parole." An elaborate discussion of the meaning of the word "provide" seems unnecessary in this connection. Regard must be had to the subject matter. When referring to the terms of a contract, statute or constitution, as in the instances cited by the majority in their opinion, "provide" means to stipulate or establish, as a condition. When referring to material things it carries the idea to supply, furnish or make ready for use, as to provide munitions of war or means of defense; "God will provide himself a lamb;" "Can he provide flesh for his people?" "Who provideth for the raven his food?" "Such cooling fruit as the kind, hospitable woods provide;" "Provide a salve for any sore that may betide;" "What penny hath Rome borne, what men provided, what munitions sent, to underprop this action?" Examples could be multiplied indefinitely. To transfer the meaning as applied to one subject matter to the other is an ingenious though palpable perversion, having for its transparent object the manifest evasion of the real meaning of the words. While construction is permis-

sible when the meaning is doubtful, it is not permissible to distort a perfectly plain meaning in order to nullify for a desired purpose the manifest intention.

The use of the word "provide" in the title is not only etymologically correct, as indicating an intention to furnish the means for a particular purpose by making an appropriation of money, but it is in accord with customary legislative practice. An act to provide for a particular purpose has always been a usual form of title for an act appropriating money for that purpose, and so far as we know it has never before been questioned that it sufficiently indicated the purpose. All the money now being paid out from day to day for the current expenses of the State government is paid under an appropriation made by an act having for its title "An act to provide for the ordinary and contingent expenses of the State government until the expiration of the fiscal quarter after the adjournment of the next regular session of the General Assembly." (Laws of 1909, p. 77.) Moreover, all the money that has been paid out for the ordinary expenses of the State government for more than sixty years has been paid by virtue of appropriation acts, each having a similar title. The incidental expenses of many, if not all, sessions of the General Assembly have been paid by virtue of acts each entitled "An act to provide for the incidental expenses," etc. Every volume of the session laws contains appropriation acts, each entitled "An act to provide for" various purposes and having in the title no other reference to an appropriation. The constitution of 1818 contained no provision in regard to the titles of bills. That of 1848 provided that no private or local law should embrace more than one subject and that should be expressed in the title. (Const. of 1848, art. 3, sec. 23.) In 1849 an appropriation act was passed with the title "An act to provide for the ordinary and contingent expenses of the government," etc. (Laws of 1849, p. 29.) In the same year an appropriation act was passed entitled

"An act to compensate Mason Brayman for services performed for the State by appointment of the General Assembly." (Laws of 1849, p. 31.) Appropriation acts with similar titles appear on pages 32, 33, 34, 36 and 37 of the same volume and frequently in every subsequent volume of session laws. It is worthy of remark that the sufficiency of such title to sustain an appropriation act, though in constant use, has never been questioned until now. To provide compensation may include fixing the amount and necessarily includes supplying the means.

The plaintiff in error was sentenced to confinement in the penitentiary "until discharged by the State board of pardons as authorized and directed by law, provided such term of imprisonment in said penitentiary shall not exceed the maximum term for which the said defendant was convicted and sentenced." The judgment of a court should be definite and certain. It should determine the rights recovered or the penalty imposed. The extent of the sentence imposed by a judgment of conviction cannot remain in the discretion of the judge, to be determined in the future. Judgment is the conclusion of the whole matter and must determine the rights of the parties. (*People* v. *Pirfenbrink,* 96 Ill. 68.) The crime of which the defendant was convicted was forgery. The maximum term provided by law for forgery under section 105 of the Criminal Code is fourteen years; under sections 106 and 107 it is twenty years. Aside from any other objection to the judgment, the court has not determined whether the maximum term of imprisonment of the plaintiff in error shall be fourteen years or twenty years. It leaves the question open for determination at a future time and by another tribunal. An examination of the record preceding the judgment might enable such other tribunal to determine what judgment, in its opinion, the court should have rendered. This, however, is not sufficient, for it is the province of the court, only, to render judgment upon the record.

After trial and conviction by the verdict of a jury, at common law the penalty denounced by the law was imposed by the judgment of the court, whether such penalty was fixed and determined, or discretionary, as to the quantum, with the judge. (4 Blackstone's Com. 375.) While the law fixes the penalty for the crime, it is the judgment of the court, only, which imposes the penalty upon the offender. Such action of the court in determining the quantum of the punishment is judicial. The law does not act automatically upon the verdict of the jury. The imposition of the penalty, even when fixed by law, calls for the exercise of judicial power, and neither the court nor the legislature has the power to direct that a convicted defendant shall be imprisoned at the will or discretion of the Governor, warden of a penitentiary or executive board. The plaintiff in error is adjudged to be imprisoned until discharged by the State board of pardons when the law gives that board no power to discharge. His sentence may extend to fourteen or twenty years. Its maximum extent has not been determined by the court, and by what authority it is to be determined is undefined.

The discharge of a prisoner under the Parole law does not result from the exercise of the Governor's power to pardon or commute sentences. That power is constitutional and not subject to legislative restrictions. Under the Parole law the order for the prisoner's discharge is made by the board of pardons. The Governor's action in approving it is dependent upon the precedent action of the board of pardons. It cannot, therefore, be referred to his power to pardon or commute sentences, which is independent.

In *People* v. *Strassheim,* 242 Ill. 359, it was held that the provisions of section 4 of the Parole act were not unconstitutional, because it was held that, considering all the provisions of the act, a paroled convict was entitled to a hearing before the board of pardons before he could be re-imprisoned. The provisions of that section are vital to

246—10

the act, for if they are invalid the whole purpose of the act fails. The parole depends on that section and without it there can be no parole system. In our judgment, however, the whole act is invalid because it attempts to confer upon the board of pardons judicial powers in violation of article 3 of the constitution, and because it violates section 16 of article 4 of the constitution. Moreover, the judgment in this case is erroneous because it authorizes imprisonment until discharged by the State board of pardons and because it does not ascertain the maximum term of imprisonment of the plaintiff in error.