**PEOPLE of the UNITED STATES ex rel. HARRIS v. RAGEN.**

No. 47 C 514.

United States District Court
N. D. Illinois, E. D.

Jan. 18, 1949.

P. Newton Todhunter, of Chicago, Ill. (Raymond W. Ickes, of Chicago, Ill., of counsel), for plaintiff.

George F. Barrett, Atty. Gen., for respondent.

CAMPBELL, District Judge.

In December, 1927 the relator, Robert Harris, was convicted and sentenced by the Criminal Court of Cook County for a period of one year to life to the penitentiary for the crime of burglary. On January 6, 1944 he was paroled to Cairo, Illinois, under the charge of one James Wade, parole officer. On February 5, 1944 Wade submitted a report recommending to the Office of Supervision of Parolees that Harris' parole be revoked on the grounds of violation of parole in connection with three burglaries and an attempt at burglary. Warrant for arrest as a parole violator was issued by Joseph Ragen, Warden, on February 11, 1944. Three indictments were returned against Harris on February 14, 1944 charging him with certain burglaries alleged to have occurred on the nights of January 24, 26 and 29, 1944. As of the present writing, no trial has been had on

any of the indictments. Harris was returned to the Joliet Penitentiary on March 9, 1944, and on April 13, 1944 the Division of Correction declared him a violator.

The matter is now before this Court upon the petition of Harris for a writ of habeas corpus wherein he asserts that the nature of the hearing conducted by the Division of Correction amounted to a deprivation of liberty without due process of law in violation of the Fourteenth Amendment to the Constitution. Due to certain irregular circumstances appearing from his petition to have existed during the short period he was on parole, relator was granted a hearing on his petition in open court. The court hearing, however, although illuminating as to certain practices of supervising parolees in Illinois which might well be subject to criticism, failed to enlarge the single issue of whether the hearing before the Division of Correction was violative of due process.

█ It should be understood at the outset that a parolee possesses no inherent constitutional right which would entitle him to a hearing before his parole could be revoked. If he seeks to assert such a right, he must look to the Statutes rather than to the Federal Constitution. In the case of Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 819, 79 L.Ed. 1566, the Supreme Court, after holding that a probationer could not lawfully be incarcerated without the court hearing required by statute, stated further:

"In thus holding we do not accept the petitioner's contention that the privilege has a basis in the Constitution, apart from any statute. Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose. Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266. But the power of the lawmakers to dispense with notice or a hearing as part of the procedure of probation does not mean that a like dispensing power, in opposition to the will of Congress, has been confided to the courts."

And the rule thus laid down is equally applicable to parole as it is to probation or suspension of sentence.

I am unable to find any Illinois Statute which, on its face, purports to guarantee a hearing by the Division of Correction on the subject of revocation of parole. The Criminal Code of that State is silent on the point:

"* * * And, provided, further, that all prisoners and wards so temporarily released under parole, shall, at all times, until the receipt of their final discharge, be considered in the legal custody of the officers of the Division of Correction, and shall, during the said time, be considered as remaining under conviction for the crime or offense of which they were convicted and sentenced or committed and subject to be taken at any time within the enclosure of such penitentiary, reformatory, and institution herein mentioned. Full power to enforce such rules and regulations and to retake and reimprison any inmate so upon parole is hereby conferred upon the officers and employees of the Division of Correction. The order or writ certified to by the warden, superintendent or managing head of such penitentiary, reformatory or of such other institution above mentioned, with the seal of the institution attached and directed to all sheriffs, coroners, constables, police officers or to any other particular persons named in said order or writ, shall be sufficient warrant for the officer or other person named therein to authorize the said officer or person to arrest and deliver to the proper officer of said penitentiary, reformatory or such other institution the body of the conditionally released or paroled prisoner named in said writ, and all sheriffs, coroners, constables, police officers or other persons named therein shall execute said order or writ the same as criminal processes. * * *" Ill.Ann.Stat. c. 38, § 807.

However, in the case of People v. Strassheim, 242 Ill. 359, 90 N.E. 118, 121, the Supreme Court of Illinois declared that the Parole Act of 1899, which is similar to the Act under consideration here, impliedly contained a provision for an administrative hearing:

"We think, however, that the act does contemplate a hearing before the board of pardons. Section 4 requires the warden, immediately upon the return of any con-

ditionally released or paroled prisoner, to make report of the same to the board of pardons, giving the reasons for the return of the paroled prisoner. This provision appears to be for the purpose of providing for a review by the board of the action of the warden, and if he has acted arbitrarily and without good cause it would be the duty of the board to overrule his action and permit the prisoner to remain upon the parole from which he was recalled. The act gives the board of pardons supervision over the whole matter, and section 6 gives authority to determine whether the prisoner has served his parole acceptably and whether he can safely be finally discharged. The act does not, in terms, provide for a hearing before the board; but if the warden is not accountable to any one no report would be necessary, and considering the whole provisions of the act, it could not have been intended that the reimprisonment of a prisoner is to be left to the autocratic discretion or whim of the warden.

"As we hold that the relator is entitled to a hearing before the board of pardons, section 4 of the act does not deprive him of his liberty without due process of law, * * *."

▇▇▇ Assuming, therefore, that a hearing by the Division of Correction is a prerequisite to parole revocation in Illinois, it should be noted that in the case at bar a hearing was actually granted to the petitioner. But the power of a court to scrutinize the quality of an administrative function and superimpose its judgment upon that of the agency is confined within narrow limits. The administration of the parole law is the exercise, through an executive branch of the government, of the state's power to keep safely, supervise and discipline its prisoners. Such matters are not judicial, but are matters of prison discipline. Quite obviously, then, a court has no authority to interfere unless the administrative body has acted arbitrarily or capriciously. And this power is even more stringently limited where a federal court is called upon to review the acts and decisions of an administrative agency of a sovereign state.

"If the federal court were to review the discretionary acts of a state prison administrative body, when it would necessarily assume paramount power and authority over the state's control of its prisoners. To do so is far beyond the review of judicial records, legitimately within the purview of a habeas corpus proceeding. I shall not embark upon such an undertaking. The jurisdiction to interfere with the proceedings of state governmental bodies charged with the prosecution and punishment of offenders is an exceedingly delicate one to be exercised with the greatest of care and nicest sense of propriety." United States ex rel. Lashbrook v. Sullivan, D.C., 55 F.Supp. 548, 550.

In the light of the foregoing principles, this Court is unable to state that relator failed to receive a fair hearing by the Division of Correction. The verbatim report of the proceedings before that body reveals that fifty-eight pertinent questions were asked of relator and that ample opportunity was presented to him to relate his version of the story, as evidenced by the following colloquy:

"Q. Is there anything more that you have in mind that you want to mention? A. Sir?

"Q. Do you want to mention anything more?"

It was certainly within the authorized province of that administrative body to weigh the credibility of Harris and, conversely, utterly beyond the scope of the powers of this Court to substitute its judgment as to his truth or falsity for that of the board. It cannot be contended validly that he was entitled to the services of an attorney during the conduct of the hearing, and I am unable to conceive of what further protections should be accorded the alleged constitutional rights of the petitioner than were already rendered by the Division of Correction.

The writ of habeas corpus heretofore issued herein is hereby quashed and the relator is remanded to the custody of the respondent.