Commonwealth ex rel. Banks *v.* Cain, Appellant.

582

Argued September 28, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Claude T. Reno,* Attorney General, with him *Louis A. Bloom,* Assistant District Attorney, *William B. Mc-Clenachan, Jr.,* District Attorney, and *Michael S. De Pierro,* Special Deputy Attorney General, and *M. Louise Rutherford,* Deputy Attorney General, for appellant.

*Robert W. Beatty,* with him *Michael S. Reps, A. Sidney Johnson, Jr.,* and *Robert B. Greer,* for appellee.

OPINION BY MR. JUSTICE STERN, November 23, 1942:

On July 26, 1940, the relator, Elmer Banks, was sentenced to the Delaware County prison for a term of not less than one nor more than two years from June 15, 1941 (which was the date of expiration of another sentence for violation of a previous parole), and to pay a fine of $100 and costs. On June 15, 1942, the court directed that he be paroled upon payment of the fine and costs, but defendant, the keeper of the prison, refused to release him because, on June 2, 1942, the Pennsylvania Board of Parole had ordered that he should be paroled on December 15, 1942. Banks obtained a writ of habeas corpus and the court, being of opinion that the Act of August 6, 1941, P. L. 861, which created the Pennsylvania Board of Parole, was unconstitutional, ordered his immediate release on parole as it had previously directed. The District Attorney of Delaware County has appealed on behalf of defendant; the Attorney General also has entered his appearance.

The act in question, which became effective on June 1, 1942, provides for the establishment of a uniform and exclusive system for the administration of parole in Pennsylvania. It creates an independent administrative board with exclusive power to parole and reparole, to commit and recommit for violations of parole, and to

discharge from parole all persons theretofore or thereafter sentenced by any court in the Commonwealth to imprisonment in any penal institution of the State or of a county. The powers and duties of the board do not extend to persons sentenced for a maximum period of less than two years; as to such persons the courts retain their present powers of parole. Neither is the board given any authority over convicts condemned to death or serving life imprisonment. The board's power to parole may not be exercised in any case before the expiration of the minimum term of imprisonment fixed by the court in its sentence. The act does not apply to persons committed to houses of refuge for boys or girls, institutions for the discipline or correction of juveniles, or persons imprisoned under sentence by an alderman, justice of the peace or magistrate, or committed in default of payment of any fine or of bail.

The constitutionality of this statute is attacked on two principal grounds. The first is that it infringes upon the power of the Governor to grant commutations of sentence and pardons (Article IV, section 9). There is no novelty in this contention; it has been made many times in the courts of other states in which parole systems are administered by boards or prison managers, and has been rejected in practically all jurisdictions.[1] There is a radical difference between a pardon and a parole. A pardon is the exercise of the sovereign's prerogative of mercy. It completely frees the offender from the control of the state. It not only exempts him from further punishment but relieves him from all the legal

---

[1] *People v. Hale*, 64 Cal. App. 523, 222 P. 148; *People v. Joyce*, 246 Ill. 124, 92 N. E. 607; *Miller v. State*, 149 Ind. 607, 49 N. E. 894; *Ware v. Sanders*, 146 Iowa 233, 124 N. W. 1081; *State v. Page*, 60 Kan. 664, 57 P. 514; *George v. Lillard*, 106 Ky. 820, 51 S. W. 793; *Board of Prison Commissioners v. DeMoss*, 157 Ky. 289, 163 S. W. 183; *State ex rel. Bottomly v. District Court*, 73 Mont. 541, 237 P. 525; *Ex parte Marlow*, 75 N. J. L. 400, 68 A. 171; *In re Court of Pardons*, 97 N. J. Eq. 555, 129 A. 624; *State v. Peters*, 43 Ohio St. 629, 4 N. E. 81; *Woods v. State*, 130 Tenn. 100, 169 S. W. 558.

disabilities resulting from his conviction. It blots out the very existence of his guilt, so that, in the eye of the law, he is thereafter as innocent as if he had never committed the offense: *Diehl v. Rodgers*, 169 Pa. 316, 319, 32 A. 424, 425; *Commonwealth v. Quaranta*, 295 Pa. 264, 273, 145 A. 89, 93; *Commonwealth v. House*, 10 Pa. Superior Ct. 259, 264, 265. A parole, on the other hand, does not obliterate the crime or forgive the offender. It is not an act of clemency, but a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls. It does not set aside or affect the sentence; the convict remains in the legal custody of the state and under the control of its agents, subject at any time, for breach of condition, to be returned to the penal institution. Neither is a parole a commutation of sentence within the meaning of that term in the constitutional provision. When our present constitution was adopted, parole, as a penological expedient, was unknown to American jurists and legislators,[2] and "commutation" was then generally understood as meaning a reduction in the length of the sentence, effecting a discharge of the prisoner without any further supervision over him by the state authorities.[3] The constitutional power of the Governor to grant pardons and commutations of sentence is exclusive, so that the fact that the legislature has, by various statutes, given the power of parole to the criminal courts,[4] to the

---

[2] The system of parole was introduced in America in the Elmira Reformatory, which was created in 1869 but not opened until 1876. It was first adopted in an American prison in 1884 in Ohio. It did not come into general use in the American prison system until the decade of the nineties. It made its initial entrance into Pennsylvania when the Huntingdon Reformatory was organized in 1887, and it was not adopted in our state penitentiaries until 1909 or in our county jails until 1911.

[3] The first commutation act in Pennsylvania was that of May 1, 1861, P. L. 462, which was held unconstitutional in *Commonwealth ex rel. Johnson v. Halloway*, 42 Pa. 446.

[4] Act of June 19, 1911, P. L. 1059.

586

board of managers of the Industrial Reformatory at Huntingdon,[5] and to the board of trustees of the State Industrial Home for Women,[6] indicates that parole has never been considered as being within the category of either pardon or commutation. The courts in other states have held that a parole is not a commutation as that term is employed in their respective constitutions.[7]

The other main attack on the constitutionality of the act is directed to its alleged violation of Article V, section 1, which provides that the judicial power of the Commonwealth shall be vested in the various courts therein named and in such other courts as the General Assembly may from time to time establish. It is urged that the granting of a parole is a judicial function and therefore the power to parole cannot be entrusted to an executive or administrative body. This contention also has been uniformly rejected in other jurisdictions,[8] where the constitutionality of statutes has been sustained vesting the power of parole in state boards (which now exist in some form or other in at least half of the states of the Union) or in boards of prison commissioners or man-

---

[5] Act of April 28, 1887, section 6, P. L. 63; Act of June 6, 1893, P. L. 326.

[6] Act of July 25, 1913, section 19, P. L. 1311.

[7] *State v. Duff*, 144 Iowa 142, 122 N. W. 829; *Ex parte Patterson*, 94 Kan. 439, 146 P. 1009; *George v. Lillard*, 106 Ky. 820, 51 S. W. 793; *State ex rel. Bottomly v. District Court*, 73 Mont. 541, 237 P. 525; *State v. Peters*, 43 Ohio St. 629, 4 N. E. 81.

[8] *Sims v. Rives*, 84 Fed. (2d) 871, 879 (cert. den. 298 U. S. 682); *George v. People*, 167 Ill. 447, 47 N. E. 741; *People v. Joyce*, 246 Ill. 124, 92 N. E. 607; *People v. Roth*, 249 Ill. 532, 94 N. E. 953; *People v. Mikula*, 357 Ill. 481, 192 N. E. 546; *Miller v. State*, 149 Ind. 607, 49 N. E. 894; *State v. Page*, 60 Kan. 664, 57 P. 514; *George v. Lillard*, 106 Ky. 820, 51 S. W. 793; *Commonwealth v. Brown*, 167 Mass. 144, 45 N. E. 1; *Wallace v. State*, 91 Neb. 158, 135 N. W. 549; *Ex parte Marlow*, 75 N. J. L. 400, 68 A. 171; *State v. Peters*, 43 Ohio St. 629, 4 N. E. 81; *Woods v. State*, 130 Tenn. 100, 169 S. W. 558; *Cohn v. Ketchum*, 17 S. E. 2d 43 (W. Va.).

agers of reformatories.[9] The power to grant paroles is not inherent in courts; Pennsylvania courts never had such power until it was given to them by the Act of June 19, 1911, P. L. 1059, and then only with respect to prisoners in county jails and workhouses. What the legislature thus gave it can take away again in whole or in part and vest in some other agency of government. The legislature has exclusive power to determine the penological system of the Commonwealth. It alone can prescribe the punishments to be meted out for crime. It can provide for fixed penalties or grant to the courts such measure of discretion in the imposition of sentences as it may see fit. It may enact that prison confinement shall be the punishment for crime or may abolish prisons altogether and adopt some other method of enforcing the criminal law. It may therefore establish a parole system by which prisoners shall, under certain conditions, be allowed to re-enter society through a gradual ameliora-tion of their restraint and a substitution of controlled freedom for continued incarceration. The granting of parole and the supervision of parolees are purely admin-istrative functions, and accordingly may be entrusted by the legislature to non-judicial agencies. What parole statutes give to the paroling authorities—in the present instance to the State Board of Parole—is in effect noth-ing more than the fact-finding duty of determining in each case when the conditions prescribed by the legis-ture for provisional release from confinement have been complied with, and that duty may properly be placed in charge of an administrative tribunal as is so commonly done in other fields of governmental administration. It was well said in *State v. Page,* 60 Kan. 664, 668, 57 P.

---

[9] *George v. People,* 167 Ill. 447, 47 N. E. 741; *Miller v. State,* 149 Ind. 607, 49 N. E. 894; *Ware v. Sanders,* 146 Iowa 233, 124 N. W. 1081; *State v. Page,* 60 Kan. 664, 57 P. 514; *Board of Prison Com-missioners v. DeMoss,* 157 Ky. 289, 163 S. W. 183; *Ex parte Marlow,* 75 N. J. L. 400, 68 A. 171; *People v. Adams,* 176 N. Y. 351, 68 N. E. 636; *State v. Peters,* 43 Ohio St. 629, 4 N. E. 81; *Woods v. State,* 130 Tenn. 100, 169 S. W. 558; *Cohn v. Ketchum,* 17 S. E. 2d 43 (W. Va.).

514, 516: "It is not . . . an interference with judicial authority, nor an assumption of judicial power, for the supervisors of penal institutions to administer the very conditions of punishment or clemency which the law prescribed and itself wrote into the judge's sentence. Where conditions of punishment are beforehand prescribed, and form constituent parts of the sentence of conviction, it it is not an assumption of judicial power for an administrative officer, acting within the law and the terms of the sentence, to take upon himself the task of ascertaining whether the conditions have been observed." While the court determines the guilt or innocence of the accused and pronounces upon the guilty the penalty provided by law,[10] the manner of executing the sentence is prescribed by the legislature, to be put in force and effect by administrative officers.

The exercise of the power of parole being but an administrative function which does not impinge upon the judicial power of sentencing the accused in conformity with the law, it follows that the present act may constitutionally be applied to cases where sentences were imposed before its effective date. The sentence is in no wise interfered with, especially since the act provides that a parole cannot be granted until the expiration of the minimum term prescribed by the court. The parolee is not discharged, but merely serves the remainder of his sentence by having his liberty restrained in a manner analogous to that employed in the "trusty" or "honor" system of prison discipline. "The parole authorized by the statute does not suspend sentence or operate to shorten the term. While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term. . . . While

---

[10] "The pronouncing of a sentence is undoubtedly a judicial act, but the punishment which the sentence pronounces comes from the law itself. As Blackstone truly expressed it, . . . 'The court must pronounce that judgment which the law hath annexed to the crime' ": State v. Dugan, 84 N. J. L. 603, 89 A. 691, 694.

this is an amelioration of punishment, *it is in legal effect imprisonment"*: *Anderson v. Corall*, 263 U. S. 193, 196. (Italics supplied.)

It is only if the duration of the sentence is not affected that a parole does not infringe upon judicial power; therefore we are of opinion that the portion of section 21 which attempts to give to the board the power to extend the period of parole beyond the maximum term imposed by the sentence, and section 24 which attempts to give to the board the power to discharge a parolee before the expiration of the parole period, are unconstitutional. The fixing of the term of the sentence is exclusively a judicial function. In *Commonwealth ex rel. Johnson v. Halloway*, 42 Pa. 446, it was held that a board of prison inspectors could not be vested by the legislature with the power to commute sentences, that is, to shorten the term, as such power would interfere with that of the judiciary.[11] The Board of Parole, therefore, cannot discharge a convict from parole before the expiration of the maximum term for which he has been sentenced, nor, on the other hand, extend the period of parole beyond that time.

Much attention was devoted by the court below to the possible effect of the act on cases where fines or costs of prosecution are imposed as part of the sentence. But the law in regard to fines and costs is not affected by the act; in section 31 it is specifically provided that the act shall not apply to persons committed in default of payment of any fine. The Board of Parole is given no authority concerning the payment of fines and costs, although, of course, it may, if it so desire, make such payment a condition precedent to the granting or the continuance of a parole. Article IV, section 9, of the Constitution gives to the Governor the power to remit fines,[12] and there is

---

[11] The Constitution of 1838, Article II, section 9, in force when the *Halloway* case was decided, did not give to the Governor the power to grant commutations.

[12] Query, whether this power is exclusive in view of the provision of Article III, section 7, that the General Assembly shall not pass any *local or special* law remitting fines.

no legislation granting such power to any other authority, not even to the courts; there are, however, many acts, beginning with the earliest years of the Commonwealth, which permit the release from imprisonment, on certain conditions, of persons who have served their terms and remain in confinement only because of failure to pay fines or costs of prosecution;[13] indeed, some of these acts authorize the board of prison inspectors to discharge a prisoner without the payment of fines or costs and even without proceeding under the insolvent laws, if, in the judgment of the board, he is unable to make payment.[14] Such a release from imprisonment does not, of course, remit the fine, and the Commonwealth may still recover it by execution process from whatever property the prisoner may possess. Paroles, as heretofore granted by the courts or other authorized agencies, have never been regarded as interfering with the enforcement of the payment of fines, and the power to parole has uniformly been exercised without relation thereto. If the parolee does not liquidate the fine or costs which have been imposed upon him, he is still subject, just as before the passage of the present act, to all existing laws for the enforcement of that portion of his penalty; in order to release himself from such obligation without actual payment he must obtain a remission of the fine

[13] For example: Act of March 27, 1789, section 4, 2 Sm. L. 482; Act of September 23, 1791, section 12, 3 Sm. L. 37; Act of January 17, 1831, P. L. 12; Act of June 16, 1836, sections 47, 48, P. L. 729; Act of January 24, 1849, section 6, P. L. 676; Act of April 18, 1857, P. L. 253; Act of May 6, 1887, P. L. 86; Act of June 4, 1901, section 6, P. L. 404; Act of May 6, 1915, P. L. 266.

[14] The Act of January 17, 1831, P. L. 12, gave such authority to the boards of inspectors of the state penitentiaries (see *Commonwealth ex rel. Russo v. Ashe*, 293 Pa. 322, 325, 142 A. 317, 318), and the Act of April 18, 1857, P. L. 253, extended the same authority to the board of inspectors of the Philadelphia county prison. Similar acts were passed as to other counties of the State, for example, the Act of March 22, 1871, section 2, P. L. 435, relating to Delaware County, and the Act of May 10, 1871, section 3, P. L. 706, to Northampton County.

from the Governor, or take the benefit of the insolvency laws after serving such additional period of confinement as is prescribed by existing laws, or avail himself of the procedure provided by other legislation which may be applicable to his particular case.

The theory of parole is that, instead of an inflexible system of continued imprisonment for all malefactors, it is better to allow some governmental agency, made up of persons presumably qualified for the purpose, to prescribe, in some instances and at some stage of the process of punishment, appropriate individualistic treatment for the rehabilitation of criminal offenders and their restoration to normal life in the community. The present statute proceeds on the theory that this can be better done, and the object more effectively accomplished, by entrusting the operation of the parole system to a state board the members of which shall be obliged to devote all their time and attention to the task. With the wisdom of that policy the court is not concerned. The sole question presented to us is that of the validity of the act.

The order and decree of the court below is reversed, and the record is remitted with directions to dismiss the writ of habeas corpus and remand the relator.

DISSENTING OPINION BY MR. JUSTICE DREW:

There is nothing more fundamental or basic in constitutional law, or more uniform in interpretation, than that any statute which seeks to transfer any of the duties, powers or prerogatives appertaining to one branch of our tripartite form of government to another branch thereof, is absolutely void and of no effect whatsoever. That such is extremely well established is demonstrated by a unanimous line of decisions in this and the other states, and also by decisions of the federal courts in protection of the United States Constitution. One of the best expressions on the subject is that of Chief Justice GIBSON in

*De Chastellux v. Fairchild,* 15 Pa. 18, where, speaking for this Court, he said: "The functions of the several parts of the government are thoroughly separated, and distinctly assigned to the principal branches of it, the legislature, the executive, and the judiciary, which, within their respective departments, are equal and co-ordinate. Each derives its authority, mediately or immediately, from the people; and each is responsible, mediately or immediately, to the people for the exercise of it. When either shall have usurped the powers of one or both of its fellows, then will have been effected a revolution, not in the form of the government, but in its action. Then will there be a concentration of the powers of the government in a single branch of it, which, whatever may be the form of the constitution, will be a despotism—a government of unlimited, irresponsible, and arbitrary rule. It is idle to say the authority of each branch is defined and limited in the constitution, if there is not an independent power able and willing to enforce the limitations." It is crystal clear that where a statute does violence to the constitution the court has no alternative but must declare the legislation unconstitutional and refuse to enforce it, regardless of the wisdom, expediency or necessity for its enactment. The majority, in my judgment, has completely ignored this well-settled law in concluding that the Parole Act of 1941 is constitutional.

The majority is of the opinion that by authorizing the Board of Parole to release a prisoner from confinement after he has served but his minimum sentence, the legislature has not attempted to confer upon that body a power expressly and exclusively vested in the executive branch of the government by Article IV, section 9,[1] of

---

[1] "He [the Governor] shall have power to remit fines and forfeitures, to grant reprieves, communtations of sentence and pardons, except in cases of impeachment; but no pardon shall be granted, nor sentence commuted, except upon the recommendation in writing of the Lieutenant Governor, Secretary of the Commonwealth, Attorney General and Secretary of Internal Affairs, or any three of

the Pennsylvania Constitution. With this conclusion, I cannot agree. This view overlooks entirely the fact that it is well settled in this Commonwealth that it is the maximum sentence which, in contemplation of law, is the actual sentence of the court, and the only portion which has legal validity; not the minimum: *Commonwealth v. Kalck,* 239 Pa. 533; *Commonwealth v. Sweeney,* 281 Pa. 550. If this were not so, the indeterminate-sentence statutes enacted in this State would be unconstitutional, in that sentences imposed thereunder would be uncertain and indefinite. Under such circumstances, it is a waste of time to contend that a release of a prisoner from confinement on parole before the expiration of his actual sentence—the maximum term pronounced by the court—is not in fact the granting of a qualified or conditional pardon. This Court said, in *Flavell's Case,* 8 W. & S. 197, 199: ". . . the governor may annex to a pardon any condition whether precedent or subsequent not forbidden by law, and it lies upon the grantee to perform the condition. . . . The propriety or wisdom of granting such pardons, or of the terms and conditions annexed, must rest with the executive, to whom the constitution entrusts this authority." The executive has the authority under his constitutional powers to grant a pardon with all the conditions intended by the Act of 1941 to be imposed by the Board of Parole. This definitely puts this Parole Act in conflict with the constitution. The two cannot stand together without at least sharing powers given exclusively by the constitution to the Governor.

It was said, in *In Re Conditional Discharge of Convicts,* 73 Vt. 414, wherein were reviewed authorities in many jurisdictions, including some of those relied upon

them, after full hearing, upon due public notice and in open session, and such recommendation, with the reasons therefor at length, shall be recorded and filed in the office of the Secretary of the Commonwealth."

by the majority,[2] (p. 429): ". . . when a prisoner is paroled or has received a commutation of his sentence, the judgment against him remains, and neither is a remission of guilt; but each, being a conditional release of a part of the punishment, is a partial conditional pardon, the power to grant which rests exclusively with the executive." In *People v. Cummings,* 88 Mich. 249, where a statute quite similar to the Parole Act of 1941 was held

---

[2] (pp. 426-7) "But the authorities are not in harmony upon this question. In *State v. Peters,* 43 Ohio St. 629, a law providing that the prison board of managers may parole convicts was held not an encroachment upon the pardoning power and valid. The court said it was not a commutation, adding that a 'commutation is the change of a punishment to which a person has been condemned into a less severe one;' and further said, 'It is not a conditional pardon, but the substitution of a lower for a higher grade of punishment.' Thus in avoiding a conditional pardon, the court defined a parole to be just what it had in the sentence before correctly given as the definition of a commutation, which, according to all authorities, is within the pardoning power: 4 Black. Com. 401; *Lee v. Murphy, supra* [22 Gratt. 789, 12 Am. Rep. 563]; *Ex parte* Wells, *supra* [18 How. 307].

"In *Miller v. State,* 149 Ind. 607, in upholding a similar law, the court said, 'Nor is it the exercise of the pardoning power. Pardon is remission of guilt; amnesty, oblivion or forgetfulness. The act of the board only shortens the terms prescribed by the sentence and leaves the conviction of guilt unaffected.' That such is the effect of a full pardon, is not controverted; and that a parole is not a full pardon is not debatable. But in that case, neither commutation, nor a partial, nor a conditional pardon is considered. Therefore the case is of little force as authority upon the question here involved.

"In *George v. Lillard,* 51 S. W. (Ky.) 793, a law which gives the commissioners of the sinking fund, consisting of the governor, auditor, treasurer, secretary of state and attorney general *ex officio,* the power to grant paroles was under consideration, and by a divided court, the law was held not to interfere with the pardoning power vested in the governor. But a strong dissenting opinion was filed in the case, by Judge Guffy (page 1011), holding a parole under the law, to be a conditional or partial pardon, and the law in conflict with the constitutional grant. In carefully examining the two opinions, the reasoning of the latter more fully commends itself to our judgment."

to be unconstitutional, it was said (page 252) : "Yet if it be considered that the only power conferred [upon the board of control of prisoners by the act in question] is a conditional release upon parole, still, if the prisoner keeps his parole, or, rather, if the board are of the opinion that he does, the release is in fact an absolute one. By what refinement of reasoning it can be made to appear that this is not in effect a pardon of the prisoner, is beyond my comprehension . . . [p. 260]. In looking upon this law, it is difficult to see in what respect this system of parole differs from a pardon by the Governor upon conditions. Is it not in fact a pardon,—a release upon conditions? If it is not, if the faith of the board of control is not to be kept, and the convict has no certainty that if he keeps the conditions he will not be again imprisoned, then the whole scheme is a delusion and a snare, and unworthy a place upon the statute-books. But, as it is, the only guaranty of a person so released of such good faith is the pleasure of the board. This system of parole is either a pardon upon conditions, and therefore unconstitutional, or it is no release at all, and only a permission to go outside of the walls, and stay as long as the board may will. If it is the latter,—a simple leave to stay outside until the board see fit to call them in,—the law evidently does not meet the intention of the Legislature, and is not only undesirable, but indefensible. If it is a pardon upon conditions, as the Legislature no doubt intended it should be, then it is open to all the constitutional objections mentioned. . . ."

While it is obvious, as stated in the majority opinion, that there is a marked distinction between an absolute pardon and a parole, it is equally clear that there is no difference whatever between a qualified or conditional pardon and a parole: *State v. Asher* (Mo.), 246 S. W. 911; *People v. Cummings,* supra. This latter fact the majority opinion completely ignores, despite the following appropriate expression of President Judge SULZBERGER, in *Com. v. McKenty,* 21 Pa. Dist. R. 589, 593,

which was quoted with approval by Mr. Justice ELKIN, in *Commonwealth v. Kalck,* supra, and by President Judge KELLER recently, in *Com. v. Ashe,* 145 Pa. Superior Ct. 26: ". . . the minimum sentence is merely an administrative notice by the court to the executive department, calling attention to the legislative policy that when a man's so-called minimum sentence is about to expire, the question of *grace and mercy* ought to be considered and the propriety of granting a *qualified pardon* be determined." (Italics added.)

The majority in its earnest endeavor to differentiate between a pardon and a parole, states that parole "is not an act of clemency." This statement is in direct conflict with the above quoted language of President Judge SULZBERGER, as well as the holding of this Court, in *Commonwealth v. Ashe,* 320 Pa. 341, wherein we said, speaking through Mr. Justice MAXEY (p. 344): "The granting of a parole is a matter of grace . . . ," and again, in *Commonwealth v. Sweeney,* supra, wherein Mr. Justice SADLER quoted the following language from *Commonwealth v. Kalck,* supra (p. 558: " '. . . when the sentence is for an indefinite term, and the law prescribes a maximum punishment for the crime committed, the prisoner in contemplation of that law is committed for the full term, but may secure a release at a much earlier period if by his deportment and good conduct he proves himself worthy of *the clemency* which it is the policy of indeterminate-sentence laws to extend him.' " (Italics added.)

Assuming, but not admitting, that a release on parole is not in fact a pardon on condition, then how can it possibly be concluded that such a release is not at least a commutation of sentence? No amount of sophistry can gainsay that to permit a prisoner to be liberated from confinement at any time prior to the expiration of his maximum sentence is a lessening or changing of the actual sentence imposed, even though he may be still technically in custody of the state and subject to be returned

to prison if he violates the conditions of his release. In this regard, the Supreme Court of Utah, in *State v. State Board of Corrections,* 16 Utah 478, speaking through its then Chief Justice, said (p. 482) : "In effect, the parole substitutes the punishment imposed by it for that imposed by the sentence. The actual punishment is changed. One punishment known to the law is changed to another punishment known to the law, and this is commutation. But it may be said that the punishment imposed by the parole under the statute, if valid, is conditional. It is true that the continuance of the substituted punishment depends upon certain conditions,— the observance of the rules of conduct prescribed by the parole, and the reports by the prisoner exacted by its terms. But whether the commutation is unconditional or conditional, as to time, it can make no difference. In either case the power to make the commutation is vested in the board of pardons. Raplje and Lawrence, in their Law Dictionary, define 'commutation' to be 'the substitution of a lesser grade of punishment for that inflicted by the sentence pronounced upon conviction.' Again, commutation has been defined to be 'the change of a punishment to which a person has been condemned, to a less severe one.' And it is added that 'this can be granted only by the authority in which the pardoning power resides.' 6 Am. & Eng. Enc. Law (2d Ed.) p. 356. We hold that the statute . . . [is] absolutely void, because [it is] contrary to the provision of the constitution. . . ." The majority opinion states that "The sentence is in no wise interfered with" by the granting of the parole, yet cites *Anderson v. Corall,* 263 U. S. 193, 196, where it is said "While [parole] is an *amelioration* of punishment, it is in legal effect imprisonment." (Italics added.)

The majority reaches its conclusion that parole is not a commutation of sentence within the meaning of that term in the constitutional provision, because "When our present constitution was adopted, parole, as a peno-

logical expedient, was unknown to American jurists and legislators, and 'commutation' was then generally understood as meaning a reduction in the length of the sentence, effecting a discharge of the prisoner without any further supervision over him by the state authorities." This is a non sequitur. Such reasoning overlooks the fact that "commute" is derived from the Latin word "commutare", which means to "change": Webster's New International Dictionary (2d Ed.). "Commutation" meant at the time the constitution of this Commonwealth was adopted in 1874, as it does now, "The change of a punishment to which a person has been condemned into a less severe one": Bouvier's Law Dictionary (14th Ed., 1870). It is a mistake to suppose that only a shortening of the term of imprisonment is commutation. Any change of the sentence which lessens the punishment, such as absolving prisoners from serving "at hard labor" or "in solitary confinement", when such was a part of the sentence, is a commutation. Such alterations in the terms of sentences were obviously not unknown to the framers of the present constitution.

The only ground upon which statutes in this Commonwealth permitting parole of prisoners after service of their minimum terms have been held to be constitutional is that they merely give the prison authorities power to recommend to the executive that the prisoners be released on parole: *Com. v. Ashe*, 145 Pa. Superior Ct. 26. The Parole Act does more than that, for it attempts to confer upon that body the absolute authority to release the prisoner upon parole before the expiration of his maximum term, in entire disregard of the executive, and for that reason, if for no other, the statute violates the constitutional provision vesting the power to pardon and to commute sentences exclusively in the executive department of the Commonwealth. In an Article by James M. Kerr, Esquire, an eminent legal writer and editor, entitled "The Indeterminate-Sentence Law Unconstitutional", which appeared in 55 Am. Law Rev. 722,

it was said in this connection (p. 731-3) : "The courts holding the indeterminate-sentence law to be constitutional do so on the express ground that any judgment of sentence under such law is, in legal effect, a sentence to imprisonment for the maximum term provided by the law, and not for a minimum or any intermediate term; declaring that it is on this theory, only, that such sentences can be held to be certain and definite, and therefore not void, for otherwise the indeterminate-sentence law would be unconstitutional because of the uncertainty and indefiniteness of the sentence thereunder. It being conceded that the term is certain and definite for the maximum term, . . . and being fixed and determined, it follows as night follows day, that the prisoner must serve that term in full . . . ; and can be discharged or paroled by act of the governor only; any statute attempting to confer that power upon another person or body is plainly unconstitutional under a proper and intelligent construction of the provisions of the constitution, where those provisions are administered as written and the opinion of the individual is not set up against the fundamental law as to what the provision should be. . . . The prison directors, or board of parole, or other body provided by statute, are not given the power of pardon, and cannot be given the power of pardon, by the indeterminate-sentence law; the utmost that they can do, or can be constitutionally authorized to do, is to recommend the prisoner to the governor for pardon."

Furthermore, it is held by the majority opinion that the Parole Act does not encroach upon the constitutional powers and prerogatives of the judiciary in violation of Article V, section 1,[3] of our Constitution. While the legislature has the power to define crime and fix the pun-

---

[3] "The judicial power of this Commonwealth shall be vested in a Supreme Court, in courts of common pleas, courts of oyer and terminer and general jail delivery, courts of quarter sessions of the peace, orphans' courts, magistrates' courts, and such other courts as the General Assembly may from time to time establish."

ishment, it is nevertheless the court's exclusive province to hear and adjudge under the law so enacted: *Com. v. McKenty*, 52 Pa. Superior Ct. 332. "The whole judicial power of the Commonwealth is vested in courts. Not a fragment of it belongs to the legislature. The trial, conviction, and sentencing of criminals are judicial duties, and *the duration or period of the sentence is an essential part of a judicial judgment in a criminal record*" (italics added): *Commonwealth ex rel. Johnson v. Halloway*, 42 Pa. 446, 448. It seems to me that by the Act here in question, the legislature has attempted to invade the province of the judicial branch of the government by endeavoring to allow the Board of Parole to fix the term of confinement. In this connection it was said in *People v. Cummings*, supra (pp. 252-3) : "It is in the power of the Legislature to fix all punishment for crime, and to provide for a minimum and maximum punishment, and to give the courts in which the prisoners are convicted a discretion to fix a term between these limits, but it cannot be contended for a moment that this discretion can be given to any other person or persons. To do so would imperil the liberties of the citizen by putting his punishment for wrongs committed into the arbitrary power of unauthorized persons, without any right of remedy in the courts."

Citing a number of cases in other jurisdictions,[4] the majority further states that "The granting of parole and the supervision of parolees are purely administrative functions, and accordingly may be entrusted by the legislature to non-judicial agencies". The reasoning of these cases, in my opinion, is merely evasive; it is not

---

[4] *People v. Hale*, 64 Cal. App. 523, 222 P. 148; *Miller v. State*, 149 Ind. 607, 49 N. E. 894; *State v. Page*, 60 Kan. 664, 57 P. 514; *George v. Lillard*, 106 Ky. 820, 51 S. W. 793; *Board of Prison Commissioners v. DeMoss*, 157 Ky. 289, 163 S. W. 183; *Ex parte Marlow*, 75 N. J. L. 400, 68 A. 171; *State v. Peters*, 43 Ohio St. 629, 4 N. E. 81; *Woods v. State*, 130 Tenn. 100, 169 S. W. 558; *Sims v. Rives*, 84 Fed. (2d) 871, 879.

sound in law or logic. The sound view is well expressed in the Article of Mr. Kerr, supra, as follows (p. 738) : ". . . a duty is ministerial in those cases only in which the law exacting the discharge of the duty prescribes and defines the time, mode and occasion of its performance, with such certainty that nothing remains for judgment or discretion; where such discretion and judgment enter into the act, it is judicial. Where a duty imposed or a power delegated is one lying in the discretion or judgment of an officer other than a judge, it is a quasi-judicial and not a ministerial duty; and when such officer is charged with the duty of looking into and acting upon facts not in a way in which the law specifically directs, but after a discretion in its nature judicial, as is the case under the indeterminate-sentence statutes, the function is a quasi-judicial function. An act is judicial when it requires the exercise of judgment or discretion by one or more persons, body or board, when acting as public officers in an official capacity, in a manner which seems to them just and equitable, or for the general public welfare—as is the case under the indeterminate-sentence statutes. This being the case the act can in no sense be termed ministerial, and a law conferring the right, power or function is not within the protection as to constitutionality of laws conferring purely ministerial duties and functions. . . ."

Nor can I agree in the majority view that as applied to sentences imposed before its effective date, as in the instant case, the Parole Act of 1941 does not interfere with or change a final judgment of a court. In holding the Act of May 1, 1861, P. L. 462, unconstitutional, this Court said, in *Commonwealth ex rel. Johnson v. Halloway,* supra (p. 448) : "In respect to one of the relators who was convicted and sentenced before the law was passed, it is considered very clear that it is a legislative impairing of an existing legal judgment." See also *Ex parte Darling,* 16 Nev. 98.

I do agree with the majority, however, that section 21 of the Act (which provides that the Board of Parole may

extend the period of parole beyond the maximum term imposed by the court), and section 24 thereof (which provides that the Board may discharge from parole before the end of the maximum term imposed), are invalid. To allow the Board to extend the period of parole beyond the term imposed by the court would obviously permit a nonjudicial body to perform judicial functions, since the pronouncement of a sentence undoubtedly is the prerogative of the courts exclusively, and cannot be delegated to any administrative board. If the Board has power to reduce the maximum sentence, by releasing from parole before the expiration of that sentence, it has power to commute sentences, which authority, as heretofore indicated, has been placed exclusively in the hands of the executive department by the constitution. And to permit such action on the part of the Board would clearly interfere with a lawful judgment of a court.

But even under the majority view that the Act is constitutional, it does not follow that the Board of Parole can parole a convict before his fine and costs have been paid. Although the statute by section 31 specifically states that it shall not apply to persons committed in default of payment of fines, it is silent regarding persons committed to serve a prison term and to pay a fine as well. If the Legislature had intended to allow parole in the latter case without the fine and costs first being paid, it would have said so. As to sentences imposed prior to the effective date of the Act, however, such a pronouncement would have been an attempt to change a judicial judgment in opposition to the constitution. It cannot be denied that the fine and costs are as much a part of the sentence as the term of imprisonment and that the sentence intended that they be paid before any release from confinement. To say that the prisoner would owe the amount, and that it could be collected from him by some other method is no answer. The point is that he cannot be released from imprisonment until the fine and costs are actually paid, without changing

the sentence, except by taking advantage of the insolvency laws. That this is a matter of great moment to the various counties of the Commonwealth is shown by the statement of the learned judge of the court below that in one year $114,000 was collected in Delaware County in fines and costs. The amount collected in the sixty-seven counties of the State is very considerable; and most of this money would be lost if fines and costs were not collected before parole. As to sentences imposed after the statute's effective date, however, it may be true that the Legislature could validly permit prisoners to be released on parole without having paid their fine and costs. But it has not done so. Its silence on this point is tantamount to an express provision that the law shall remain as it has been.

It should be added that the Parole Act of 1941 is materially different from that proposed by the commission of eminent citizens appointed by the Governor to investigate and report on the application of criminal penalties in the Commonwealth and the operation of its probation and parole systems and to make recommendations for the improvement and strengthening thereof. The law as enacted needlessly creates an extravagantly expensive system of parole, by permitting the present costly county parole system as well as that of the Board of Pardons, to continue to function although it calls for an "exclusive" system of parole; it places the appointment of an unlimited number of parole officers and employees in political hands; and it is so inartistically drawn that, even if its many and serious defects are now overlooked, it is bound to result in confusion and litigation before its true character is ascertained. A real service would be done the Commonwealth in maintaining the integrity of the Constitution, if this Act were declared invalid and the General Assembly given an opportunity to propose a constitutional amendment, to provide a legal and model parole law, for the rehabilitation of our unfortunates.

I would declare the Parole Act of 1941 unconstitutional and affirm the final decree of the learned court below.

Mr. Justice PATTERSON joins in this dissent.