## Commonwealth ex rel. v. Fluck, Warden

*Victor J. Roberts*, of *High, Dettra & Swartz*, for relator.

*J. Stroud Weber*, assistant district attorney, for Commonwealth.

KNIGHT, P. J., January 11, 1943.—As of April term, 1941, Ralph Burrell, the relator, was convicted in the Court of Oyer and Terminer of Montgomery County of sodomy and sentenced to undergo imprisonment in the Montgomery County jail for a period of not less

than two years or more than four years, to be computed from September 16, 1941. Burrell presented a petition for parole, on which a hearing was set for December 31, 1942. On said date, after a hearing before two judges, the court granted the parole under certain conditions, and decreed that the relator be paroled for the remainder or unexpired portion of the minimum sentence imposed. T. Hastings Yeakle and Rev. Fuller Holden were appointed probation officers. Fred R. Fluck, the warden of the Montgomery County Prison, acting under the direction of the Pennsylvania Board of Parole, refused to release the relator, who then filed a petition on which a writ of habeas corpus was awarded, and the relator brought before the court on January 5, 1943, at which time the above facts were developed.

The case was held under advisement, and the relator remanded to prison to await the further order of the court.

The Act of June 19, 1911, P. L. 1059, authorizes the judges of the courts of quarter sessions and the courts of oyer and terminer of the several judicial districts of the Commonwealth to release on parole any convict confined in the county jail of their respective districts. It was by authority of this act that this court decreed the release of the relator on parole.

The Act of August 6, 1941, P. L. 861, creates the Pennsylvania Board of Parole. Section 1 declares: ". . . it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth."

Section 17 provides that the board created by the act "shall have exclusive power to parole and reparole, commit and recommit for violations of parole, and to discharge from parole all persons heretofore or hereafter sentenced by any court in this Commonwealth to imprisonment in any prison or penal institution thereof, whether the same be a state or county peni-

tentiary, prison or penal institution, as hereinafter provided . . . Provided, however, That the powers and duties herein conferred shall not extend to persons sentenced for a maximum period of less than two years, and nothing herein contained shall prevent any court of this Commonwealth from paroling any person sentenced by it for a maximum period of less than two years . . ."

Section 21 of the act provides, inter alia:

"The power to parole herein granted to the Board of Parole may not be exercised in the board's discretion at any time before, but only after, the expiration of the minimum term of imprisonment fixed by the court in its sentence or by the Pardon Board in a sentence which has been reduced by commutation."

Section 35 of the act provides, inter alia, that the Act of June 19, 1911, P. L. 1059, and all amendments and supplements to said act, insofar as the same relate to persons over whom exclusive jurisdiction to parole is vested in the board of parole, are repealed. There is no inherent right to parole vested in the courts: Commonwealth ex rel. v. Cain, 345 Pa. 581 (1942).

The power to parole from county prisons was given to the judges of the criminal courts of the judicial districts of the Commonwealth by the Act of 1911, supra.

If the relator comes within the class of persons over whom the exclusive jurisdiction of parole is vested in the State Board of Parole under the Act of 1941, supra, then as to relator the Act of 1911 was repealed and this court had no power or authority to parole him.

Over what class of persons does the act give to the State Board of Parole exclusive power to parole? The act, section 17, gives the exclusive power to the board to parole all persons theretofore or thereafter sentenced by any court in this Commonwealth to imprisonment in any prison or penal institution thereof, with the following exceptions: (1) persons sentenced

for a maximum period of less than two years: section 17; (2) convicts condemned to death or serving life imprisonment: section 21; (3) persons committed to the Pennsylvania Training School, houses of refuge for boys and girls, or institutions for the discipline or correction of juveniles: section 31; (4) persons imprisoned in any county jail, workhouse, penal or correctional institution under sentence by an alderman, justice of the peace, or magistrate, or committed in default of any fine or of bail: section 31.

The relator does not come within any of the above exceptions; therefore he falls within the class over whom the State Board of Parole has the exclusive power of parole. It is true the board may not exercise its discretion as to parole until after a prisoner has served the minimum of his sentence, but his status is fixed by the maximum and not the minimum of his sentence. If the sentence is two years or over, the State Board of Parole has the exclusive power of parole. This interpretation is strengthened by an examination of the act as a whole and some of the language of its various sections.

The proviso in section 17, that "nothing herein contained shall prevent any court of this Commonwealth from paroling any person sentenced by it for a maximum period of less than two years," shows that it was the intent of the legislature to take from the courts the power to parole where the maximum sentence was two years or more. If the legislature had intended to give the courts the power to parole during the minimum sentence, irrespective of the length of the maximum, it could easily have said so. In section 21 the power given to the board of parole "may not be exercised in the board's discretion at any time before, but only after, the expiration of the minimum term of imprisonment fixed by the court in its sentence . . ." An examination of the act shows that the board has cer-

tain duties to perform before the expiration of the minimum term of persons it has the power to parole.

Section 18 requires the court sentencing any person for a term as to which power to parole is given to the board to transmit to the board within 30 days of the sentence a full and complete copy of the record, etc.

Section 19 makes it the duty of the board, upon the commitment to prison of any person whom said board is given the power to parole, to investigate the circumstances of the offense, and procure information as to the character, habits, antecedents, connections, and environment of such person.

The intent of the act seems clear that the board has the exclusive power to parole any person where the maximum sentence is two years or more, and that once such a sentence is imposed the board has exclusive jurisdiction as to parole, but may not exercise its power to parole until the minimum sentence is served.

Finally, section 35 of the act repeals the Act of 1911, supra, insofar as it relates to persons over whom exclusive jurisdiction is vested in the Board of Parole. The persons referred to are those receiving a maximum sentence of two years or more, and not the persons whose minimum sentences may have expired.

Our first impression was that, inasmuch as the power of the State Board of Parole could not be exercised until the minimum sentence was served, the jurisdiction of the courts to parole persons sentenced to county prisons remained during the minimum term of their sentences; otherwise the power of parole during the minimum sentence would not exist except in the Governor. This would lead to hardships in certain cases, but it may be pointed out that this situation has always existed in reference to prisoners sentenced to State penitentiaries.

After further considering the wording of the act, we have come to the conclusion that our first impression was in error, and that the true meaning of the

act is as above set forth. The writer of this opinion has consulted the other judges of this court, and we are all of the opinion that the court had no power to grant a parole to Ralph Burrell under existing law.

And now, January 11, 1943, the order of December 31, 1942, paroling Ralph Burrell, is vacated; the writ of habeas corpus is dismissed, and the relator remanded to the Montgomery County Prison.