J-E02004-20

2021 PA Super 166

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID SIMMONS | : | |
| | : | |
| Appellant | : | No. 2461 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 18, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004160-2017


BEFORE: BENDER, P.J.E., BOWES, J., SHOGAN, J., LAZARUS, J., OLSON, J., DUBOW, J., KUNSELMAN, J., MURRAY, J., and McCAFFERY, J.

CONCURRING OPINION BY KUNSELMAN, J.:　　　**FILED AUGUST 18, 2021**

I fully join in the Majority Opinion but write separately to note additional statutory authority relevant to "split sentences" and the history of parole, which buttress the Majority's conclusions. I also provide additional analysis to support overruling **Commonwealth v. Wendowski**, 420 A.2d 628 (Pa. Super. 1980).

While trial courts have the inherent authority and discretion to impose a sentence, the legislature dictates which actions constitute crimes and sets the possible penalties for such actions. Quite simply, "[i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence **must** be vacated." **Commonwealth v. Stevenson**, 850 A.2d 1268, 1271 (Pa. Super. 2004) (*en banc*) (emphasis added); **see also Commonwealth v. Pi Delta Psi, Inc.**, 211 A.3d 875, 889–90 (Pa. Super. 2019), *appeal denied,* 221 A.3d 644 (Pa. 2019).

Additionally, the legislature has given trial courts the authority to issue a "split sentence" which includes both incarceration and probation. The Sentencing Code provides:

**(a) General rule**.--In determining the sentence to be imposed the court shall, except as provided in subsection (a.1), consider and select **one or more** of the following alternatives, and may impose them consecutively or concurrently:

(1) An order of probation.
(2) A determination of guilt without further penalty.
(3) Partial confinement.
(4) Total confinement.
(5) A fine. . . .

42 Pa. C.S.A. § 9721(a) (effective September 4, 2012 to December 17, 2019) (emphasis added).

As the Majority observed, the trial court here imposed a split sentence of 6-23 months of incarceration with 3 years of probation, and it ordered that the probation was consecutive to the confinement.[1]

_____

[1] The trial court stated that this sentence shall commence on January 26, 2018, and that Simmons was immediately paroled to house arrest with conditions: school, work, and religious reasons. I note that the granting of parole here was improper, because there is no such thing as "immediate parole." By statute, parole power cannot be exercised before the expiration of the minimum sentence fixed by the court. **See** 61 Pa. C.S.A. § 6137(a)(3); **Commonwealth v. Evola**, 618 A.2d 969, 970-71 (Pa. Super. 1992) (trial court lacked statutory authority to grant early parole; defendant is required to complete the minimum sentence before parole may be granted). If the trial court meant to impose a term of partial confinement, to allow for work release, pursuant to 42 Pa. C.S.A. §§ 9724, 9755, it should have imposed this sentencing option instead of total confinement.

To determine whether the trial court could revoke the probation portion of this sentence, based on a parole violation, requires us to consider and interpret sections of Title 42 (the Sentencing Code) and Title 61 (Prisons and Parole). In these statutes, the legislature has established separate rules for confinement and for orders of probation. **Compare** 42 Pa. C.S.A. § 9756 (Sentence of total confinement) **with** 42 Pa. C.S.A. § 9754 (Order of probation). First, I discuss statutes relevant to confinement and parole and then statutes relevant to probation.

For a sentence of total confinement, the legislature created an indeterminate sentencing scheme.[2] Under such a scheme, the sentencing court generally must announce a sentence that includes both a minimum and a maximum term. 42 Pa. C.S.A. § 9756. "In imposing a sentence of total confinement the court shall at the time of sentencing specify any maximum period up to the limit authorized by law. . . ." 42 Pa. C.S.A. § 9756(a). Thus, while the trial court has some discretion on the length and type of the sentence, the legislature determines the highest possible maximum term for each offense. **See, e.g.,** 18 Pa. C.S.A. §§ 1103–1105 (setting maximum terms for felony, misdemeanor, and summary offenses). Also, according to our statutes, the minimum period of confinement must not exceed one-half

---

[2] The length of time the defendant will serve in custody is indeterminate at sentencing, because the defendant may ultimately serve only the minimum, the maximum, or any sentence between the two. **Commonwealth v. Stemple**, 940 A.2d 504, 508 (Pa. Super. 2008).

the maximum. 42 Pa. C.S.A. §§ 9756(b), 9757. "[T]he maximum term represents the sentence imposed for a criminal offense, with the minimum term merely setting the date after which a prisoner *may* be paroled." ***Commonwealth v. Blount***, 207 A.3d 925, 939, (Pa. Super. 2019*) appeal denied*, 218 A.3d 1198 (Pa. 2019) (citation omitted) (emphasis added).

The legislature also established where a confinement sentence shall be served and who determines if, and when, an inmate is eligible for parole. For confinement, a maximum term of five years or more, shall be served in a state prison; a maximum term of two but less than five years, may be served in either the state prison or the county jail, and a maximum of less than two years shall be served in county jail. 42 Pa. C.S.A. § 9762(b). If confinement is served in a state prison, then the State Board of Probation and Parole has the exclusive authority to determine if, and when, the inmate may be granted parole.[3] 61 Pa. C.S.A. § 6132. For these inmates, the trial court may give only a recommendation regarding parole to the State Parole Board. ***Id.*** at § 6134 (b). If the sentence is served in county jail, however, the trial court has the authority to determine if, and when, the inmate may be granted parole.[4]

---

[3] Any order of the trial court attempting to deny parole to a state prisoner is considered a nullity. ***Commonwealth v. Harris***, 620 A.2d 1175, 1179 (Pa. Super. 1993). The trial court has no authority to grant parole where the term of incarceration is two years or more. ***Tillman v. Commonwealth, Bd. of Probation and Parole***, 409 A.2d 949, 951 (Pa. Cmwlth. 1980).

[4] Unless the trial judge, by special order, has directed supervision by the State Parole Board. 61 Pa. C.S.A. § 6132(a)(2)(i).

*Id.* at § 6134.1; 42 Pa. C.S.A § 9775; *Commonwealth v. McDermott*, 547 A.2d 1236, (Pa. Super. 1988) (common pleas court retains authority to grant and revoke parole for offender sentenced to maximum term of imprisonment of less than two years).

Notably, parole is a legislative creation. Sentencing courts have no inherent authority to grant parole; the court's authority must come from the General Assembly. *Presly v. Pa. Bd. of Prob. and Parole*, 748 A.2d 791, 793 (Pa. Cmwlth. 2000). When the founders first adopted the Constitution of the Commonwealth of Pennsylvania, parole, as a penological expedient, did not exist. *Com. ex rel. Banks v. Cain,* 28 A.2d 897, 899 (Pa. 1942). The system of parole initially appeared in America in the Elmira Reformatory, opened in 1876. *Id.* at 900, n.2. "It was first adopted in an American prison in 1884 in Ohio. It did not come into general use in the American prison system until the [1890s]. Parole made its initial entrance into Pennsylvania when the Huntingdon Reformatory was organized in 1887, and it was not adopted in our state penitentiaries until 1909 or in our county jails until 1911." *Id.*

The Supreme Court of Pennsylvania previously discussed the history of parole and the separation of powers between the courts and the legislature as follows:

> The power to grant paroles is not inherent in courts; Pennsylvania courts never had such power until it was given to them [by the legislature] by the Act of June 19, 1911, P.L. 1059, 61 P.S. § 314, and then only with respect to prisoners in county jails and workhouses. What the legislature thus gave it can take

away again in whole or in part and vest in some other agency of government.

The legislature has exclusive power to determine the penological system of the Commonwealth. It alone can prescribe the punishments to be meted out for crime. It can provide for fixed penalties or grant to the courts such measure of discretion in the imposition of sentences as it may see fit. It may enact that prison confinement shall be the punishment for crime or may abolish prisons altogether and adopt some other method of enforcing the criminal law. It may therefore establish a parole system by which prisoners shall, under certain conditions, be allowed to re-enter society through a gradual amelioration of their restraint and a substitution of controlled freedom for continued incarceration.

The granting of parole and the supervision of parolees are purely administrative functions, and accordingly may be entrusted by the legislature to non-judicial agencies. What parole statutes give to the paroling authorities - in the present instance to the State Board of Parole - is in effect nothing more than the fact-finding duty of determining in each case when the conditions prescribed by the legislature for provisional release from confinement have been complied with, and that duty may properly be placed in charge of an administrative tribunal as is so commonly done in other fields of governmental administration.

*Id*. at 900 (paragraph formatting added).

The High Court further elaborated that parole was not:

an interference with judicial authority, nor an assumption of judicial power, for the supervisors of penal institutions to administer the very conditions of punishment or clemency which the law prescribed and itself wrote into the judge's sentence. Where conditions of punishment are before-hand prescribed, and form constituent parts of the sentence of conviction, it is not an assumption of judicial power for an administrative officer, acting within the law and the terms of the sentence, to take upon himself the task of ascertaining whether the conditions have been complied with.

*Id.*

Thus, "while the court determines the guilt or innocence of the accused and pronounces upon the guilty the penalty provided by law,[5] the manner of executing the sentence is prescribed by the legislature. . . ." ***Id.*** at 901. Additionally, while an inmate is on parole, he is still considered to be incarcerated:

> The parolee is not discharged, but merely serves the remainder of his sentence by having his liberty restrained in a manner analogous to that employed in the 'trusty' or 'honor' system of prison discipline. 'The parole authorized by the statute does not suspend service or operate to shorten the term. While on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term. While this is an amelioration of punishment, ***it is in legal effect imprisonment***'.

***Id.*** (quoting ***Anderson v. Corall***, 263 U.S. 193, 196 (1923) (some punctuation omitted)).

Importantly, as part of establishing the rules for parole, the legislature also set forth the penalty for a parole violation. If a parolee violates his state parole by committing a new crime, the legislature authorized the State Parole Board to revoke parole and recommit the parolee to the prison; if recommitted, the parolee shall serve the remainder of the term which the parolee would have been compelled to serve had parole not been granted. 61

---

[5] "The pronouncing of a sentence is undoubtedly a judicial act; but the punishment which the sentence pronounces comes from the law itself. As Blackstone truly expressed it, 'The court must pronounce that judgment which the law hath annexed to the crime.'" ***Com. ex rel. Banks v. Cain***, 28 A.2d 897, 901 n.10 (Pa. 1942) (quoting ***State v. Dugan***, 89 A. 691, 694 (N.J. 1913) (some punctuation omitted)).

Pa. C.S.A. §§ 6137(h), 6138(a). Similarly, if the parolee violates his county parole by committing a new crime, as was the case here, the legislature provided that the trial court may "on cause shown by the probation officer that the inmate has violated his parole, recommit and reparole the inmate in the same manner and by the same procedure as in the case of the original parole. . . ." 42 Pa. C.S.A. § 9776(e). Thus, whether the State Parole Board or the sentencing court supervises the parolee, the statutory sanction for a parole violation is recommitment.

Here, the Majority and the Concurring/Dissenting Opinion (hereafter Dissent) agree that the only remedy for a parole violation provided in our statutes is recommitment of the parolee for the remainder of the term. Majority at 30, Concurring/Dissenting at 1. Because Simmons violated his parole, trial court can revoke parole and recommit Simmons to serve the balance of his 23-month term.[6] Upon remand, if the court orders recommitment, it may also reparole him at any time during that term. 61 Pa. C.S.A. § 6134.1; 42 Pa. C.S.A. § 9776(e).

As mentioned, the legislature has established separate rules if the trial court chooses to enter an order of probation. *See* 42 Pa. C.S.A. § 9754. "[T]he court shall specify the length of any term during which the defendant

_____

[6] The length of the recommitment term here may be questioned, because Simmons did not actually serve any of his 23-month maximum sentence. As noted earlier, he did not serve the minimum of 6 months, because the trial court granted him immediate parole.

is to be supervised, which term may not exceed the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision." *Id.* at § 9754(a). The court is permitted to attach reasonable conditions to probation. *Id.* at § 9754(b). Additionally, "the sentence to be imposed in the event of a violation of a condition shall not be fixed prior to a finding on the record that a violation has occurred." *Id.* at § 9754(d).

Section 9771 sets forth when a trial court may modify or revoke an order of probation. The Majority aptly discusses the interplay of subsections (a) and (b) under that section, so I will not repeat that analysis here. However, as Simmons argues in his brief, subsection (d) of section 9771 also supports the Majority's interpretation. That subsection provides: "**(d) Hearing required. --**There shall be no revocation or increase of conditions of sentence under this section except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant *while on probation*. . . ." 42 Pa. C.S.A. § 9771(d).

Here, there is no doubt that Simmons was not "on probation" at the time of his new crime. Thus, the court could not have considered any evidence of his conduct "while on probation" as a basis to revoke its order of probation. Instead, Simmons was on parole; his new crime constituted a violation of the conditions of his parole, for which there is a separate remedy, *i.e.*, recommitment. Under this subsection, the trial court could not consider Simmons actions on parole as the basis to revoke his probation.

The Dissent maintains that the conditions of Simmons' probation attached at sentencing. "By imposing the conditions of a defendant's probation at the original sentencing, a defendant is put on notice as to what the specific conditions of his probation are and that if he fails to lead a 'law abiding life' *from that day forward*, he faces possible parole and probation revocation." Concurring/Dissenting at 6 (emphasis added). I disagree.

Under the Dissent's view, the term of Simmons' probation was actually 4 years and 11 months, not 3 years.[7] This view also places Simmons on parole and probation *concurrently*, which was not the split sentence that the trial court ordered.[8]

Although the Dissent would choose to treat the incarceration and probation parts of Simmons' split sentence as intertwined, our legislature has chosen to treat them separately. If the legislature intended for a new crime while on parole to serve as a basis to revoke probation, it could have drafted

---

[7] Arguably, if the terms of probation attached on the date the court imposed the original sentence, then Simmons' sentence would have been 5 years, because it would have started one month prior to the effective date of the sentence stated by the trial court. I believe that the trial court may order a convicted defendant to remain in custody of the court, under supervision of the probation office, pending the start of his sentence. Here, however, the trial court made no such order. As such, if Simmons had committed a new crime between December 18, 2017 (the day of his sentencing hearing), and January 26, 2018 (the effective date of his sentence), his actions would not have constituted a violation of any supervision.

[8] The trial court could have imposed the incarceration and probation parts of this split sentence to run concurrently, but it did not. *See* 42 Pa. C.S.A. § 9721(a).

section 9771 (d) to provide: "There shall be no revocation or increase of conditions of sentence under this section except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant ***while on probation or parole***…."[9] It did not.

In short, the legislature treats parole and probation separately. Indeed, the penalties for technical violations of parole are dramatically different than the technical violations of probation. ***Compare*** 61 Pa. C.S.A. § 6138(d)(3)-(5) (setting forth defined maximum sentences of six months, nine months and one year of recommitment for first, second, and third technical parole violations, respectively) ***with*** 42 Pa. C.S.A. § 9771 (b)-(c) (making all sentencing alternatives available to the court that were available at the time of initial sentencing, with due consideration being given to the time spent serving the order of probation). Whether intentional or not, the legislature has authorized much broader and potentially more severe sanctions for probation violations than for parole violations.

To be sure, the trial court must be aware of these distinctions, and should consider them before choosing which sentencing alternatives to impose during its original sentence, and whether to impose those sentence options

---

[9] Alternatively, the legislature could broadly state, "***while under supervision***" which would cover a defendant who is under ***any*** type of supervision.

concurrently or consecutively. Also, as our decision today makes clear, the trial court must question whether the "VOP" hearing is for an alleged violation of parole or violation of probation, as the court's possible sanctions are very different.

As a final matter, like the Majority, I believe **Wendowski** should be overruled. In **Wendowski**, a three-judge panel of this court relied on cases readily distinguishable from the instant matter.

First, the **Wendowski** court relied on a decision from the District of Columbia Court of Appeals, **Wright v. United States**, 315 A.2d 839 (D.C. App. 1974), which affirmed the revocation of a consecutive term of probation while a defendant was serving a term of work release. The D.C. trial court revoked Wright's work release and probation and ordered him to serve the balance of his original one-year sentence. The appeals court affirmed, because if it reversed, a defendant who was previously granted probation "could commit criminal acts with impunity -- as far as revocation of probation is concerned -- until he commenced actual service of the probationary period." **Id**. at 841–42.

That logic does not apply here, as Simmons did not commit new criminal acts with impunity. He was on parole and was subject to recommitment for the balance of his term. Thus, his new crimes did affect his prior sentence. Revoking his consecutive probation, however, was an additional sanction, which the General Assembly of Pennsylvania has not authorized.

Moreover, the **Wright** Court acknowledged that the outcome we reach today -- concluding the court lacked authority to revoke a probation sentence that had not yet started -- "may occasionally happen" due to "legislative oversight" where the statutes fairly leave "no room for construction to avoid such a result." **Id.** at 841.

The **Wendowski** Court also relied on a concurring opinion from the United States Court of Appeals for the Fifth Circuit in **James v. United States**, 140 F.2d 392, 394 (5th Cir. 1944) (Waller, J, concurring), which lacks statutory support. There, the **James** Court concluded that, because a future date was not clearly fixed for the commencement of probation, the original judgment placed the defendant on probation at the time the sentence was rendered. As such, he was on probation when he committed the acts for which revocation of probation was sought and obtained. Thus, the majority determined that the district court was acting within its power and discretion under a federal statute when it revoked James' probation. **Id**. at 393.

The concurrence disagreed that James was on probation at the time of his new crime. Nonetheless, it would have found that the trial court was authorized to revoke James' probation. The concurrence cites no relevant statutory authority for this conclusion, only the general notion that, "A defendant on probation has no contract with the court. He is still a person convicted of crime, and the expressed intent of the Court to have him under probation beginning at a future time does not 'change his position from the

- 13 -

possession of a privilege to the enjoyment of a right.'" *Id.* at 394 (citing *Burns v. United States*, 287 U.S. 216 (1932)).

However, a closer reading of *Burns* indicates that the district court that revoked Burns' probation was interpreting a federal probation statute. That statute expressly gave district courts very broad discretion to revoke probation at any time. *Burns*, 287 U.S. at 221. The *Burns* Court observed that the statute broadly conferred discretion to grant probation, as well as to modify or revoke it. *Id.*

There, the relevant federal statute generally provided that "The court may revoke or modify any condition of probation, or may change the period of probation." *Id.* As the *Burns* Court observed, "There [were] no limiting requirements as to the formulation of charges, notice of charges, or manner of hearing or determination. No criteria for modification or revocation [were] suggested which [were] in addition to, or different from, those which pertain to the original grant [of probation]. The question in both cases was whether the court [was] satisfied that its action would subserve the ends of justice and the best interests of both the public and the defendant. The only limitation, and this applie[d] to both the grant and any modification of it, [was] that the total period of probation shall not exceed five years." *Id.*, (citing Act of March 4, 1925, § 1 (18 USCA § 724)). Thus, *Burns* interpreted a completely different, and much less restricting, statute regarding probation revocation than the one the Pennsylvania legislature has created.

As the Majority noted, the **Wendowski** Court did not examine the relevant Pennsylvania statutes as we have done here, because the issue of whether the trial court could revoke a probation sentence that had not yet started was not before that court. Because **Wendowski** conflicts with those statutes, despite its lengthy history in our precedent, it must be overruled. "While *stare decisis* serves invaluable and salutary principles, it is not an inexorable command to be followed blindly when such adherence leads to perpetuating error." **Commonwealth v. Small**, 238 A.3d 1267, 1285 (Pa. 2020) (citation omitted).

Obviously, the legislature has the power to modify the sanctions for parole and probation violations to make them consistent if it chooses. Or, it may grant sentencing courts the authority to revoke probation upon proof of a violation of parole, as Congress did in **Burns, supra**. However, under the present statutes, the Majority correctly holds that the trial court could not revoke Simmons' probation and resentence him for a probation violation that occurred prior to the start of his probation. For the additional reasons stated here, I join the Majority in finding that Simmons' sentence is illegal and must be vacated. The trial court may recommit him to the balance of his incarceration sentence for his parole violation, but it must reinstate the probation from its original, split sentence.

Judge Lazarus, Judge Dubow and Judge McCaffery join this Concurring Opinion.

Judge Shogan did not participate in the consideration or decision of this matter.