## In re Parole. No. 2

UMSTED, Special Deputy Attorney General, April 8, 1943.—This department is in receipt of your communication requesting advice concerning the following subjects:

I. Does the Pennsylvania Board of Parole have jurisdiction over minors under 18 years of age, serving sentences at the male industrial schools at Huntingdon and White Hill, and the Industrial Home for Women at Muncy?

II. Where a prisoner, undergoing a general sentence at a male industrial school, or the industrial home for women, has been paroled, may he or she be granted a final discharge from parole before the expiration of the period which the legislature has fixed as the maximum term of imprisonment for the crime of which the prisoner was found guilty and sentenced?

III. Does the Board of Parole have authority to reparole on a first sentence, as of a date prior to June 1,

1942, a prisoner sentenced for an offense committed while on parole?

I. To interpret the Parole Act of August 6, 1941, P. L. 861, 61 PS §331-1 et seq., as it applies to children under 18 years of age sentenced to the two male State industrial schools and the female State industrial home, it is first necessary to point out the technical distinction between a sentence and a commitment.

The Act of June 2, 1933, P. L. 1433, as amended by the Act of June 15, 1939, P. L. 394, 11 PS §243 et seq., fixes the age of a juvenile as under 18 years, and provides for the disciplinary and corrective treatment of such minors by "commitment" to the individuals and institutions designated in section 8.

The effect of such commitment upon the juvenile is limited by section 19 of the act, 11 PS §261, as follows:

"No order made by any juvenile court shall operate to impose any of the civil disabilities ordinarily imposed by the criminal laws of the Commonwealth, nor shall any child be deemed to be a criminal by reason of any such order or be deemed to have been convicted of crime. The disposition of a child or any evidence given in a juvenile court shall not be admissible as evidence against the child in any case or proceeding in any other court."

On the other hand a sentence is a punishment by fine or imprisonment, following a conviction. Section 5 of the Act of April 28, 1887, P. L. 63, 61 PS §484, reads as follows:

"Any person, who shall be convicted of an offense punishable by imprisonment in the Pennsylvania Industrial Reformatory at Huntingdon and who, upon such conviction, shall be sentenced to imprisonment therein, shall be imprisoned according to this act and not otherwise."

Clearly, then, there is a distinction between a juvenile committed to an institution and a juvenile sen-

tenced to an institution. And your problem treats of the children under 18 years of age *sentenced* to the State industrial schools at Huntingdon and White Hill and the State Industrial Home for Women at Muncy.

Section 17 of the Parole Act, 61 PS §331.17, reads in part as follows:

"The board shall have exclusive power to parole and reparole, commit and recommit for violations of parole, and to discharge from parole all persons heretofore or hereafter *sentenced* by any court in this Commonwealth to imprisonment in any prison or penal institution thereof . . . Provided, however, That the powers and duties herein conferred shall not extend to persons *sentenced* for a maximum period of less than two years . . ." (Italics supplied.)

It is obvious from the foregoing that the jurisdiction of the board is not extended to children "committed" to institutions, but is extended to children "sentenced" to institutions where the maximum term is two years or more.

The prohibition contained in the forepart of section 31 of the Parole Act, 61 PS §331.31, with regard to persons committed, is mere surplusage, while the latter part removes from the board's authority a limited class of persons sentenced. We quote the section, as follows:

"Anything herein contained to the contrary notwithstanding, this act shall not apply to persons *committed* to the Pennsylvania Training School, houses of refuge for boys or girls, institutions for the discipline or correction of juveniles, as defined by existing laws, or persons imprisoned in any county jail, workhouse or other penal or correctional institution under *sentence* by an alderman, justice of the peace or magistrate, or committed in default of payment of any fine or of bail."

Under section 14 of the Act of 1933, as amended by the Act of 1939, supra, 11 PS §256, children of 16 years and less than 18 years of age may be tried and convicted in courts of quarter sessions. Therefore,

such children may be sentenced to the industrial schools for men and the industrial home for women. It follows that there will be certain minors under the age of 18 years serving general sentences at the above-indicated institutions. Over these cases the board does have jurisdiction, providing, of course, that the maximum term fixed by the legislature for the crime of which the minor was found guilty and sentenced equals or exceeds two years.

II. In In re Parole (No. 1), 46 D. & C. 542, we stated (p 550) :

". . . while in an indeterminate sentence, i. e., one with a minimum and maximum term, the board may parole at the expiration of the minimum term, and in a flat sentence and a general sentence may parole immediately upon incarceration, it may never extend the parole beyond the term of the maximum sentence fixed by the court in indeterminate and flat sentences or by the legislature in a general sentence. Nor can the board terminate the parole before the expiration of the maximum sentence fixed by the court in the first two instances and by the legislature in the last instance."

This question must be construed as a request for reconsideration of the last clause of the foregoing quotation. That is, may the board terminate the parole of a prisoner undergoing a general sentence before the maximum period fixed by the legislature for the offense of which the prisoner had been convicted and sentenced?

Before the creation of the Board of Parole the method of discharging prisoners serving general sentences at the industrial school at Huntingdon was outlined in section 14 of the Act of April 28, 1887, P. L. 63, 61 PS §513, as follows:.

"When, in the opinion of the superintendent, after due investigation, and obtaining the opinion of the physician and moral instructor, any person confined in the reformatory has given such evidence, as is deemed

reliable and trustworthy, that such person has been so improved by his treatment in said reformatory as to justify his liberation, a certificate of the fact and the opinions of the superintendent, doctor and moral instructor, under their hands and seals, shall be submitted to the boards of managers;[1] when, after due notice to all the managers at the next meeting thereafter, said board shall consider the case of the person so presented; and when the said board shall determine that such person is entitled to his discharge, said board shall cause a record of the case of such person to be made, showing the date of his commitment to the reformatory, the time he has been detained, the cause thereof, a copy of his sentence, the copy of the certificate as aforesaid of the officers and the action thereon of the board, said record to be signed by the managers and sent to the judge of the court that sentenced said persons to the reformatory, who shall, after consulting the district attorney and no further reason for detention existing, send, under the seal of the court, to the said board, an order to discharge the said person from said reformatory."

The same general procedure was authorized for the industrial school at White Hill under section 6 of the Act of June 21, 1937, P. L. 1944, 61 PS §545-6, and for the Industrial Home for Women at Muncy, in cases of inmates under 25 years of age, by section 19 of the Act of July 25, 1913, P. L. 1311, 61 PS §570.

In brief, then, the power to discharge a prisoner undergoing general sentence at either of the three above-indicated institutions was in the board of trustees in two instances and the Department of Welfare in the other instance with the approval of the court.

Under section 17 of the Parole Act of August 6, 1941, 61 PS §331.17, exclusive power to discharge from pa-

---

[1] New board of trustees.

role was given to the Board of Parole. We quote the pertinent portion of that section:

"The board shall have exclusive power to parole and reparole, commit and recommit for violations of parole, and to discharge from parole all persons heretofore or hereafter sentenced by any court in this Commonwealth to imprisonment in any prison or penal institution thereof, whether the same be a state or county penitentiary, prison or penal institution, as hereinafter provided."

The power to discharge from parole as used in the Act of 1941 is tantamount to the power to discharge from imprisonment as used in the Act of 1887. A prisoner not paroled is discharged from prison at the expiration of his maximum sentence. A prisoner on parole, at the expiration of his sentence, is discharged from parole. Both discharges have the same effect. The prisoner has paid his debt to society. And since we held in In re Parole (No. 1), supra, that the Board of Parole had the right to parole prisoners serving general sentences at the State industrial schools for males and the Industrial Home for Women, it necessarily follows that the board has the authority to discharge them from parole.

The conclusion of Mr. Justice Stern in Commonwealth ex rel. v. Cain, 345 Pa. 581, 589 (1942), does not require a negative answer to your second question. He says:

"The Board of Parole, therefore, cannot discharge a convict from parole before the expiration of the maximum term for which he has been sentenced, nor, on the other hand, extend the period of parole beyond that time."

What the court obviously means here is that the prisoner may not be discharged before the expiration of the maximum term *fixed by the court,* because the statement is predicated upon the authority of Commonwealth ex rel. v. Halloway, 42 Pa. 446 (1862). And

that case stands for the principle that the fixing of the term of sentences is a judicial function. But in case of general sentence no maximum term is fixed by the court. The legislature has merely provided that the prisoner may not be detained beyond the period which the law fixes as the maximum for which the prisoner could have been sentenced had the court the right to commit on a flat or indeterminate sentence.[2]

Moreover, at page 587 of Commonwealth ex rel. v. Cain, supra, we have the following:

"The power to grant paroles is not inherent in courts; Pennsylvania courts never had such power until it was given to them by the Act of June 19, 1911, P. L. 1059, and then only with respect to prisoners in county jails and workhouses. What the legislature thus gave it can take away again in whole or in part and vest in some other agency of government. The legislature has exclusive power to determine the penological system of the Commonwealth. It alone can prescribe the punishments to be meted out for crime. It can provide for fixed penalties or grant to the courts such measure of discretion in the imposition of sentences as it may see fit."

It follows, if the general sentence may be said to have a maximum term, that maximum term is fixed by the legislature and not by the court. Consequently, in discharging from parole or from imprisonment persons serving general sentences, the Board of Parole is exercising authority under a legislative grant to reduce a term which the court never had a right to fix.

Since the Board of Parole is given authority under section 17 of the Parole Act to discharge prisoners from parole, it may exercise that authority at any time after parole in the case of a person serving a general sentence, i. e., where no maximum or minimum term is

---

[2] This subject is discussed at length in In re Parole (No. 1), 46 D. & C. 542.

fixed by the court.[3] To this extent In re Parole (No. 1), 46 D. & C. 542, is modified.

III. In In re Parole (No. 1), supra, we specifically held (p. 550):

"Where a parolee during parole is convicted of another crime and subsequently sentenced therefor, the Board of Parole does have authority under the law to reparole the prisoner on his first sentence."

The question now is, whether that authority may be exercised as of a date prior to the effective date of the Parole Act of August 6, 1941, P. L. 861, 61 PS §331.1 et seq., viz, prior to June 1, 1942.

We are of the opinion it may not.

In Commonwealth ex rel. v. Smith, 146 Pa. Superior Ct. 354, 357 (1941), the court said, referring to a penitentiary prisoner:

"Had he then applied for a parole and it had been granted, he would have started on his sentence for subornation of perjury and two years thereafter he might have been released on parole. But he did not do so, and *we find no authority for the issuance nunc pro tunc of a constructive parole* as of date of May 30, 1940. (Italics supplied.) Relief beyond that hereinafter stated is a matter for the Board of Pardons. However, he is entitled to apply *now* for a parole under the sentence to No. 233 March Sessions, 1930, and if granted, he will then start serving the sentence to No. 219 December Sessions 1938, and will be eligible for *release on parole* when he has served the minimum term of that sentence, to wit, two years."

We find nothing in the new parole law that would give the board a right which Commonwealth ex rel. v. Smith, supra, says was denied by preëxisting laws.

---

[3] Provided, of course, that the maximum which the legislature has fixed as punishment for the crime of which the prisoner was guilty equals or exceeds two years.

Section 32 of the new parole law treats with the cases upon which the board may act. It reads as follows:

"The provisions of this act are hereby extended to all persons who, at the effective date hereof, may be on parole or liable to be placed on parole under existing laws with the same force and effect as if this act had been in operation at the time such persons were placed on parole, or became liable to be placed thereon, as the case may be."

What this section obviously means is that the board from and after the effective date of the new parole act has the right to consider all cases where the prisoner is either on parole or eligible for parole. There is no language in this section, or as a matter of fact in any other section of the act, which could be construed to change the law enunciated in Commonwealth ex rel. v. Smith, supra.

The limitation in section 21 of the act that the board may parole only after the minimum term fixed by the court is in itself a prohibition against the board's exercise of paroling authority as of a date prior to June 1, 1942. Because, had it the right to parole nunc pro tunc, the board could circumvent the proviso in section 21 by the simple expedient of paroling on a first sentence to predate the inception of a second sentence and thereby allow the minimum term of the second sentence to expire before June 1, 1942, making the prisoner eligible for parole as of that or some subsequent time before the expiration of the minimum of the second sentence.

With regard to back time cases, i. e., where a prisoner is serving the balance of a first sentence after having been sentenced for a second offense, the board at any time after June 1, 1942, could reparole on the first sentence and permit the prisoner as of that date to start serving the second sentence. But in no case

could the board permit the prisoner to start serving his second sentence before June 1, 1942. With regard to the prisoner who on June 1, 1942, was serving his second sentence, the board obviously could not parole until after the expiration of the minimum term of that sentence.

We wish to point out, however, that where a prisoner has served or is serving several consecutive terms under simultaneous sentences, the board may parole on all sentences at the expiration of the total minimum. It may, however, act at the expiration of each minimum sentence: Commonwealth ex rel. v. Ashe, 141 Pa. Superior Ct. 408 (1940); Commonwealth ex rel. v. Ashe, 330 Pa. 289 (1938).

We are of the opinion, therefore, and you are accordingly advised:

I. The Pennsylvania Board of Parole does have jurisdiction over minors under 18 years of age, *serving sentences* at the male industrial schools at Huntingdon and White Hill, and the Industrial School for Women at Muncy. However, juveniles *committed* to these institutions are not under the board's jurisdiction or supervision.

II. Where a prisoner, undergoing a general sentence at a male industrial school, or an industrial home for women, has been paroled, he or she may be granted by the board a final discharge from parole before the expiration of the period which the legislature has fixed as the maximum term of imprisonment for the crime of which the prisoner was found guilty and sentenced.

III. The Board of Parole does not have the authority to parole or reparole as of a date prior to the date on which the parole or reparole is granted. In other words, the board cannot act nunc pro tunc.